**[J-14-2017]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | |
|---|---|
| VALLEY FORGE TOWERS APARTMENTS N, LP; MORGAN PROPERTIES ABRAMS RUN OWNER LP; KBF ASSOCIATES, LP; GULPH MILLS VILLAGE APARTMENTS LP; AND THE LAFAYETTE AT VALLEY FORGE LP | : No. 49 MAP 2016<br>:<br>: Appeal from the Order of the<br>: Commonwealth Court at No. 1960 CD<br>: 2014 dated 9/10/15 affirming the order<br>: of the Montgomery County Court of<br>: Common Pleas, Civil Division, at No.<br>: 2014-09870 dated 10/9/14 |
| v. | :<br>:<br>: ARGUED: March 8, 2017 |
| UPPER MERION AREA SCHOOL DISTRICT AND KEYSTONE REALTY ADVISORS, LLC<br><br>APPEAL OF: MORGAN PROPERTIES ABRAMS RUN OWNER LP; KBF ASSOCIATES, LP | :<br>:<br>:<br>:<br>:<br>:<br>: |

*OPINION*

**CHIEF JUSTICE SAYLOR**                              **DECIDED: July 5, 2017**

This appeal raises the question of whether the Uniformity Clause of the Pennsylvania Constitution permits a taxing authority to selectively appeal only the assessments of commercial properties, such as apartment complexes, while choosing not to appeal the assessments of other types of property – most notably, single-family residential homes – many of which are under-assessed by a greater percentage.

## I. Background

The appeal derives from a complaint that was dismissed on a demurrer. Accordingly, the facts as recited below are drawn from it and developed favorably to Appellants, and we assume the truth of all well-pleaded allegations. *See Small v. Horn*, 554 Pa. 600, 608, 722 A.2d 664, 668 (1998).

The Upper Merion Area School District (the "School District"), is a taxing district in Montgomery County (the "County"), where the most recent countywide assessment of real property occurred in 1996. Since then, the market value of many of the parcels in the County, including properties within the School District, have changed, leading to significant discrepancies and a wide range of assessment ratios.[1] The School District contains commercial, industrial, and single-family residential properties. Many of the residential properties have an assessment ratio below that of many of the commercial properties. In addition, 80 percent of the single-family homes in the district have assessment ratios below the County's common-level ratio ("CLR").[2]

The School District decided to appeal the assessments of some of the properties within its boundaries. To this end, it retained Keystone Realty Advisors ("Keystone"), a private firm, to advise it as to which properties should be targeted for appeal. On Keystone's recommendation, the School District concentrated solely on commercial

---

[1] A parcel's assessment ratio is the ratio of its assessed value to its market value. *See* BLACK'S LAW DICTIONARY 140 (10th ed. 2014).

[2] The CLR, a countywide figure, is "the ratio of assessed value to current market value used generally in the county as last determined by the State Tax Equalization Board" (the "STEB"). 72 P.S. §5020-102; *see* 71 P.S. Part I, Ch. 8, Cmty. & Econ. Dev. Enhancement, Ch. 15. The STEB computes the CLR as an unweighted average of the assessment ratios for all arms-length real estate sales (except outliers) occurring in a particular calendar year. *See* 46 Pa. Bull. 4037 (July 23, 2016). During the relevant tax years, 2011 and 2012, the County's CLR was approximately 60 percent.

properties, including apartment complexes. They did so because these properties' values were generally higher than those of single-family homes, and hence, raising their assessments would result in a greater tax-revenue increase than doing the same with under-assessed single-family homes, including those which were under-assessed by a greater percentage. Another alleged factor motivating the decision was that most such homes are owned by School District residents who vote in local elections, and it would be politically unpopular to appeal their assessments.[3]

Appellants own apartment complexes in the School District. Per the above strategy, and believing Appellants' properties were under-assessed, the School District filed administrative appeals, *see* 53 Pa.C.S. §8855 (giving taxing districts the same right as taxpayers, under the Consolidated County Assessment Law, to pursue administrative appeals), which were denied by the County's Board of Assessment Appeals (the "Board"). The district appealed the denials to the common pleas court. *See id.* §8854(a) (providing the parties to an administrative appeal with the right to seek judicial review of a decision by the Board).

While those individual cases were pending, Appellants filed the present complaint, seeking declaratory and injunctive relief against the School District on the theory that it had violated the state charter's Uniformity Clause, *see* PA. CONST. art. VIII, §1 ("All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general

---

[3] Although the values of industrial properties also would likely exceed those of single-family homes, the complaint does not suggest any rationale for the School District's failure to target industrial properties for appeal. Still, it does clearly allege that the district's appeal decisions were motivated by property type, *see* Complaint at 8, ¶29, and the status of the taxpayers as residents or non-residents of the school district. *See id.* at 13, ¶53.

laws."), by systematically appealing only the assessments of commercial properties.[4] In their complaint, Appellants acknowledged that the School District's appeals of their assessments were proceeding in the county court. However, they averred they lacked an adequate remedy at law because the uniformity violation which they asserted could not be cured via the statutory appeals process – and hence, they were not required to exhaust statutory remedies. In particular, they reasoned, their claims were directed to an overall strategy on the part of the School District to discriminate against commercial properties as a group by targeting them for administrative appeals while ignoring lower assessment ratios among single-family homes. *See* Complaint at 20-21, ¶¶103-105. Appellants therefore sought a declaration that the School District's actions comprised an unconstitutional application of Section 8855, as well as an injunction preventing the district from continuing to engage in the alleged pattern of selective and discriminatory application of that statute.[5]

The School District filed preliminary objections, including demurrers to the individual claims, as well as one objection alleging a failure to exhaust statutory remedies and another alleging a lack of jurisdiction due to such failure. As to the demurrers, the district proffered that it had a statutory right to appeal property assessments, and that selective appeals do not violate the Uniformity Clause as a

---

[4] Tax uniformity incorporates equal protection precepts, and this Court has observed that "[o]ur analysis under the Uniformity Clause . . . is generally the same as the analysis under the Equal Protection Clause of the United States Constitution." *Clifton v. Allegheny Cnty.*, 600 Pa. 662, 686 n.20, 969 A.2d 1197, 1211 n.20 (2009) (citation omitted). One difference, discussed below, is that the Uniformity Clause is more restrictive in that it does not allow the government to engage in disparate tax treatment of different sub-classifications of real property, such as residential versus commercial.

[5] The complaint also included claims against Keystone which Appellants later abandoned. Because Keystone remains in the caption, we will nonetheless refer to the School District's brief as the Brief for Appellees.

matter of law. *See* Defendants' Preliminary Objections at 6, ¶¶29, 30. With regard to the exhaustion and jurisdictional preliminary objections, the district forwarded that the constitutional claim Appellants raised in their equity complaint could be raised and adjudicated in their individual administrative appeals. *See id.* at 4-5, ¶¶20, 25.

The common pleas court sustained the preliminary objections and dismissed the complaint. The court indicated Appellants' claims failed as a matter of law because the School District was not the entity that set assessments, and Section 8855 gave it a clear statutory right to appeal tax assessments set by the County. *See Valley Forge Towers Apts. N, L.P., v. Upper Merion Area Sch. Dist.*, No 2014-09870, *slip op.* at 3 (C.P. Montgomery Jan. 2, 2015). In rejecting Appellants' argument relating to discriminatory treatment, the Court indicated that "[t]he filing of selective appeals does not result in a uniformity violation, and it is not deliberate discrimination." *Id.* at 6 (citing *Weissenberger v. Chester Cnty. Bd. of Assessment Appeals*, 62 A.3d 501, 508-09 (Pa. Cmwlth. 2013) (*en banc*)). In this regard, the court ultimately concluded, more generally, that "the Uniformity Clause does not require equalization across all sub-classifications of real property." *Id.* at 7 (citing *In re Springfield Sch. Dist.*, 101 A.3d 835, 849 (Pa. Cmwlth. 2014)).[6]

The Commonwealth Court affirmed in a published decision. *See Valley Forge Towers Apts. N, L.P., v. Upper Merion Area Sch. Dist.*, 124 A.3d 363 (Pa. Cmwlth. 2015). It first considered Appellants' assertion that *Springfield* had misquoted *Downingtown Area School District v. Chester County Board of Assessment Appeals*,

---

[6] The court did not independently address administrative exhaustion or jurisdiction as such. Instead, it observed that the complaint is not a class action, and that, because Appellants were raising a novel constitutional issue (*i.e.*, one without support in the case law), that issue could be aired during their individual assessment appeals. On this basis, the court characterized Appellants' action as "seeking to avoid the statutory procedures established for the adjudication of tax assessment appeals." *Id.* at 4.

590 Pa. 459, 913 A.2d 194 (2006), and had, therefore, mischaracterized the relationship between the federal Equal Protection Clause and the Uniformity Clause. Consistent with the common pleas court, the Commonwealth Court rejected this contention. It reasoned that its pre-*Springfield* decision in *Weissenberger v. Chester County Board of Assessment Appeals*, 62 A.3d 501 (Pa. Cmwlth. 2013), had addressed the same argument and clarified that equalization is *not* required across all property sub-classifications. *See Valley Forge*, 124 A.3d at 367 (quoting *Weissenberger*, 62 A.3d at 506-09). Turning to the present case, the court recognized that the School District had allegedly created a sub-classification of properties (commercial ones) which it treated differently from other property sub-classes. The court concluded, however, that no suspect or sensitive classification was thereby formed, and hence, the classification was constitutionally permissible as long as it satisfied the deferential rational-basis test. That test was met, the court held, because, according to Appellants' averments, the School District's purpose was to increase revenues sufficiently to justify the costs of appealing. *See id.* at 368.

The court additionally acknowledged Appellants' allegation that the School District opted not to appeal the assessments of single-family homes for political reasons. *See id.* at 367. Somewhat inconsistently, it later stated that Appellants did not make any such allegation because they also averred that: (a) Keystone was the party deciding which properties to target for appeals, *see id.* at 368, and (b) the School District and Keystone were both motivated by economic gain. *See id.* at 370.[7]

---

[7] The court apparently did not consider that Keystone only acted in an advisory capacity or that the School District could have been motivated by two factors (economic gain *and* the avoidance of political accountability), each of which provided an independent incentive to appeal only commercial-property assessments.

Finally, the intermediate court observed that, to bypass statutory remedies and justify the pursuit of an equity action in court, taxpayers must, *inter alia*, raise a substantial constitutional issue. The court recognized that such an issue can be predicated solely on the manner in which the government applies the tax legislation in question. *See id.* at 371-72 (citing *Beattie v. Allegheny Cnty.*, 589 Pa. 113, 907 A.2d 519 (Pa. 2006)). Still, it stated that Appellants failed to raise a substantial constitutional challenge to the manner in which any tax statute was applied. In this respect, the court found Appellants' constitutional claim insubstantial because: (a) under *Weissenberger*, taxing districts may select properties for appeal based on financial considerations; and (b) the complaint did not implicate an "underrepresented group." *Id.* at 372 & n.4. The court noted, further, that, pursuant to the Consolidated County Assessment Law,[8] the party that appeals to court from a decision of the Board may allege a uniformity violation. *See id.* at 371 (quoting 53 Pa.C.S. §8854(a)(9)(ii)).[9]

We granted review to consider whether the Uniformity Clause permits the School District, pursuant to its statutory right to appeal individual property assessments, to concentrate solely on commercial properties while foregoing appeals as to single-family residences which may have even lower assessment ratios. *See Valley Forge Towers*

---

[8] Act of Oct. 27, 2010, P.L. 895, No. 93, §2 (as amended 53 Pa.C.S. §§8801-8868) (the "Assessment Law"). The law is a recodification of several prior acts relating to various classes of counties. It applies to, *inter alia*, counties of the second class A, as well as counties of the third through eighth classes. *See* 53 Pa.C.S. §8801(b). At all relevant times, Montgomery County was a county of the second class A.

[9] That provision states: "Nothing in this subsection shall: . . . (ii) Be construed to abridge, alter or limit the right of an appellant to assert a challenge under section 1 of Article VIII of the Constitution of Pennsylvania." *Id.* It is not immediately clear that this applies to Appellants since they were the *appellees* in the School District's individual appeals to the county court. Also, the provision does not purport to limit the fora in which uniformity challenges may be brought.

*Apts. N, L.P., v. Upper Merion Area Sch. Dist.*, ___ Pa. ___, 135 A.3d 1017, 1017-18 (2016) (*per curiam*). The questions before us involve whether the School District's method of exercising its rights under Section 8855 is constitutional, and whether the common pleas court appropriately sustained the School District's preliminary objections. Both are issues of law as to which our review is *de novo* and plenary. *See Kowenhoven v. Allegheny Cnty.*, 587 Pa. 545, 555, 901 A.2d 1003, 1009 (2006).

## II. Exhaustion of statutory remedies

In its brief and in a separate motion to quash the appeal, the School District raises a preliminary issue relating to the exhaustion doctrine, which it claims prevents us from reaching the substantive tax-uniformity question on which review was granted. The district recasts and rephrases its argument in a number of different ways, which can be summarized as follows: Appellants failed to exhaust their statutory remedies; they waived any right to argue that an exception to the exhaustion requirement presently applies by not challenging the Commonwealth Court's failure-to-exhaust holding when they petitioned this Court for allowance of appeal; that being the case, they are precluded by *res judicata* from suggesting reasons why the common pleas court could properly have exercised its equity jurisdiction to entertain their complaint; they have now raised their uniformity argument as a defense in the School District's individual appeals, thereby rendering the uniformity question moot; because the issue is moot this Court's opinion will only be advisory in nature; although Appellants are precluded from forwarding any relevant advocacy, this Court can nonetheless speak to the topic since it involves subject matter jurisdiction, which can be addressed *sua sponte*; and (via supplemental briefing) our recent decision in *City of Philadelphia v. Lerner*, ___ Pa. ___, 151 A.3d 1020 (2016), reinforces the position that the common pleas court could not properly have exercised equity jurisdiction.

Regardless of the number of ways it is characterized, the School District's position reduces to two essential contentions: Appellants have waived the issue of whether equity jurisdiction was properly invoked, and the common pleas court correctly determined that it was not properly invoked. Both contentions lack merit.[10]

The School District's waiver argument rests on the premise that the Commonwealth Court issued an alternative holding relating to jurisdiction, and this holding independently supported its affirmance order. We disagree. The intermediate court recited that two elements must be satisfied for the common pleas court to properly exercise its equity jurisdiction: the existence of a substantial constitutional issue and the lack of an adequate administrative remedy. *See Valley Forge Towers*, 124 A.3d at 371. It then repeated its prior conclusion that Appellants' constitutional argument lacked merit (and was, therefore, insubstantial). As such, the court expressly refrained from any inquiry into the adequacy of Appellants' administrative remedies. *See id.* at 372 n.4. Notably, if Appellants prevail here on their constitutional argument, the Commonwealth Court's discussion on this point will be fatally undermined. Therefore, the Commonwealth Court did not issue an alternative holding which will remain effective and dispositive regardless of our resolution of the constitutional issue presented. *See generally Tarubac v. INS*, 182 F.3d 1114, 1120 n.5 (9th Cir. 1999) ("An alternative holding is only adequate to support the result if it is separate from *and independent of* any other basis for the decision." (emphasis added)). That being the case, Appellants

---

[10] We consider whether such jurisdiction was properly invoked – rather than whether it existed – because "the requirement of administrative exhaustion is a judge-made rule and *does not pertain to the existence of subject matter jurisdiction*, but to whether such jurisdiction is properly exercised." *Beattie*, 589 Pa. at 124 n.5, 907 A.2d at 526 n.5 (emphasis added).

were not required, on pain of waiver, to challenge the Commonwealth Court's exhaustion analysis (such as it was) in their petition for allowance of appeal.

Nor did the common pleas court suggest any valid reason why its equity jurisdiction was improperly invoked. In terms of its observation that this is not a class-action complaint, *see supra* note 6, we fail to see the relevance. The court did not reference any authority suggesting that a lack of class-action status is dispositive of the jurisdictional issue. Furthermore, class-action status was also absent in *Clifton*, and yet *Clifton* endorsed the exercise of equity jurisdiction to entertain the plaintiffs' as-applied uniformity challenge to an assessment statute. In particular, *Clifton* held that the trial court's equity jurisdiction was properly invoked "because appellees' claim that the base year system results in mass, systematic, non-uniform assessments raises substantial constitutional issues, which a county board of assessment appeals would be unable to adequately redress." *Clifton*, 600 Pa. at 683 n.17, 969 A.2d at 1209 n.17; *cf. Borough of Green Tree v. Bd. of Prop. Assessments, Appeals & Review of Allegheny Cnty.*, 459 Pa. 268, 281, 328 A.2d 819, 825 (1974) (plurality) (approving the exercise of equity jurisdiction where, although not a class action, the complaint challenged the constitutionality of certain provisions of the governing assessment statute).

*Clifton*'s unable-to-adequately-address litmus comports with the explanation in *Kowenhoven* that courts look to a number of factors to determine whether a complaint is appropriately filed directly in the common pleas court. These include: the adequacy of the legal remedy that can be afforded for the claimed violation; whether legal issues other than the proper valuation of the subject properties have been raised; whether the governmental policy in question is generally applicable to all properties; whether the administrative process has little to contribute to the resolution of the constitutional question raised; and whether, as a result, strict adherence to the statutory appeal

process would lead to piecemeal litigation in the form of many individual *de novo* appeals to the trial court – all of which could be avoided through a single judicial proceeding aimed at reviewing the constitutionality of the challenged government actions. *See Kowenhoven*, 587 Pa. at 556-60, 901 A.2d at 1010-12.[11]

Notably, the adjudicatory process undertaken by the board of assessment appeals is solely directed at ascertaining the subject property's value and applying a ratio to that value. The board is not given statutory power to alter this procedure, or to refuse to determine the proper assessment per the legislative directive, based on a uniformity claim relating to a taxing district's alleged scheme of selectively targeting a particular sub-classification of properties. *See* 53 Pa.C.S. §8844(e); *see also Del., L. & W. R. Co. v. Luzerne Cnty. Comm'rs*, 245 Pa. 515, 519, 91 A. 889, 890 (1914) (acknowledging a similar limitation on the board's powers under an earlier property assessment statute); *Clifton*, 600 Pa. at 712, 969 A.2d at 1227 (observing the individual appeals process is inadequate to address claims of pervasive inequities); *cf. City of Lancaster v. Lancaster Cnty.*, 143 Pa. Cmwlth. 476, 499, 599 A.2d 289, 300 (1991) (*en banc*) ("To force every aggrieved taxpayer to assume the task of appealing, when the larger question can be expeditiously and efficiently resolved in a single action, would be unnecessarily burdensome on both property owners and the judicial system.").

The statutory appeals process is also not designed to provide the declaratory or injunctive relief Appellants seek, and moreover, strict adherence to it would implicate many of the concerns highlighted in *Kowenhoven* pertaining to piecemeal litigation and

---

[11] The governmental actions referred to in *Kowenhoven* were those of the board of assessment appeals. Given the jurisprudential concerns involved, there is no reason in logic why these same principles should not apply when the government entity is the taxing district exercising a generally-applicable method of deciding which property assessments to appeal.

the inadequacy of the statutory remedy. This undermines any suggestion that the present controversy is an inappropriate one for the exercise of equity jurisdiction. *Cf. Fry v. Napoleon Cmty. Schs.*, 580 U.S. ___, ___, 137 S. Ct. 743, 754 (2017) (holding that exhaustion was not required under a federal education statute where the gravamen of the complaint was not that the plaintiff had been denied the type of education the statute guarantees, and hence, the relief sought was not available through the statutory appeals process).

As for our recent decision in *Lerner*, that matter has little bearing on the present case. *Lerner* did not speak to the basis for equity jurisdiction to entertain a uniformity challenge. Indeed, it did not involve a uniformity challenge, but a claim that the income tax liability imposed by the city on a specific taxpayer lacked evidentiary support. As the taxpayer failed to include such assertion in his Rule 1925(b) statement on appeal from the city's collection action, this Court held that the issue had been waived. *See Lerner*, ___ Pa. at ___, 151 A.3d at 1024. The Court added, apparently in *dicta*, that, in any event, the taxpayer had failed to exhaust his administrative remedies. *See id. at ___*, 151 A.3d at 1024-25. In doing so, the Court recited the general rule requiring exhaustion and declined to endorse an exception for a claim of inadequate evidentiary support as to a single taxpayer. Such precepts have little relation to the present dispute.

Nor has the School District demonstrated that the constitutional issue is now moot.[12] For a matter to become moot, some change in the facts or applicable law must occur so that, although the plaintiff had standing at the outset of the litigation, there is no longer a live controversy. *See In re Gross*, 476 Pa. 203, 209-10, 382 A.2d 116, 119-20

---

[12] The School District's argument that this will be an advisory opinion is a reframing of, and dependent upon, its contention that the issue is moot.

(1978). Here, the School District advances its mootness argument by asserting that, in the context of the district's individual appeals to the common pleas court, Appellants have now raised – as new matter in responsive pleadings – the same constitutional claim they assert here. S*ee* Application to Quash at 19. Those responsive pleadings, however, were filed before the present action was commenced in May 2014. *See Upper Merion School Dist. v. Montgomery Cnty. Bd. of Assessment Appeals*, Intervenor's Answer and New Matter dated March 8, 2013, at ¶¶8-15, *reprinted in* Application to Quash at Exh. A. They therefore cannot have caused litigation that once involved a live controversy to become moot. Finally, there is no suggestion in the record or in the parties' briefs that, since the filing of the present appeal, the common pleas court has resolved the merits of Appellants' constitutional claim.

For the reasons given above, we reject the School District's various contentions that the trial court could not have entertained the complaint in its equity jurisdiction, and we deny its motion to quash the appeal. Accordingly, our ability to assess the merits of Appellants' Uniformity Clause challenge – the only issue accepted for review – remains unimpeded by any threshold question the School District has raised.

### III. Tax Uniformity

As reflected above, an important aspect of this dispute involves the manner in which the Commonwealth Court has understood this Court's pronouncements regarding the comparative tax-fairness requirements of the Uniformity Clause and the federal Equal Protection Clause. Appellants forcefully argue that, in a series of decisions, the intermediate court has misconstrued our analysis and holding in *Downingtown*. Thus, it is helpful to first review the relevant facets of that opinion and clarify their significance.

The *Downingtown* Court recited the foundational and longstanding principle that "a taxpayer is entitled to relief under the Uniformity Clause where his property is

assessed at a higher percentage of fair market value than other properties throughout the taxing district." *Downingtown*, 590 Pa. at 466, 913 A.2d at 199 (citing *In re Harleigh Realty Co.*, 299 Pa. 385, 388, 149 A. 653, 654 (1930)); *see Appeal of F.W. Woolworth Co.*, 426 Pa. 583, 587, 235 A.2d 793, 795 (1967) (recognizing that "uniformity has at its heart the equalization of the ratio among all properties in the district"), *quoted in Downingtown*, 590 Pa. at 468, 913 A.2d at 200. The Court explained, further, that "[t]his precept is based upon the general principle that taxpayers should pay no more or less than their proportionate share of government." *Downingtown*, 590 Pa. at 466, 913 A.2d at 199 (citing *Deitch Co. v. Bd. of Prop. Assessment, Appeals & Review of Allegheny Cnty.*, 417 Pa. 213, 220, 209 A.2d 397, 401 (1965)). The Court continued:

> While every tax is a burden, it is more cheerfully borne when the citizen feels that he is only required to bear his proportionate share of that burden measured by the value of his property to that of his neighbor. This is not an idle thought in the mind of the taxpayer, nor is it a mere speculative theory advocated by learned writers on the subject; but it is a fundamental principle written into the Constitutions and statutes of almost every state in this country.

*Id.* at 466, 913 A.2d at 199 (quoting *Del. L. & W. R. Co.'s Tax Assessment*, 224 Pa. 240, 243, 73 A. 429, 430 (1909)).

Thus, traditionally a taxpayer was able to prove non-uniformity – and thereby have the subject property's assessment lowered – through evidence, often in the form of expert testimony, relating to the assessment ratios of comparable properties in the same neighborhood, or more generally, in the taxing district at large. This is because all realty is a single class entitled to uniform treatment. *See id.* at 467, 913 A.2d at 199 (citing *In re Brooks Bldg.*, 391 Pa. 94, 101, 137 A.2d 273, 276 (1958); *Keebler Co. v. Bd. of Revision of Taxes of Phila.*, 496 Pa. 140, 142, 436 A.2d 583, 584 (1981)).

One of the primary issues in *Downingtown* arose due to an amendment to the State Tax Equalization Board Law, *see* 71 P.S. §§1709.1500-1709.1521 (formerly 72

P.S. §§4656.1-4656.17), pursuant to which the STEB was required to calculate the CLR annually for each county in Pennsylvania. The issue was whether that provision should be understood to displace the traditional method, summarized above, for a property owner to demonstrate a disproportionately high assessment ratio as compared to other properties in the taxing district. *See Downingtown*, 590 Pa. at 468, 913 A.2d at 200 ("This legislative revision raised the question of whether the traditional expert-witness approach to proving non-uniformity was still viable."). The availability of a state-provided countywide CLR could potentially be seen as eliminating the need for, or relevance of, evidence of the assessment ratios of comparable properties.

*Downingtown* rejected that premise and clarified that, regardless of the CLR as calculated by the STEB, property owners may nonetheless be entitled to relief in a judicial or quasi-judicial proceeding if they can show their parcels are over-assessed as compared to other, comparable properties. Further, in this setting taxpayers could make such a showing without having to include all *types* of properties in their analysis. The Court's recognition that such methodology remained viable notwithstanding the 1982 legislative change rested on the dual observations that the federal Equal Protection Clause guarantees this level of protection to property owners, and it also sets the constitutional "floor" for the protection of property owners' rights under the Uniformity Clause. *See id.* at 469-70, 913 A.2d at 200-01; *see also id.* at 475 n.17, 913 A.2d at 205 n.17 (explaining that, because the Equal Protection Clause sets the floor for state protections, "federal [equal protection] principles are incorporated into state uniformity doctrine").

Notably, *Downingtown* never suggested that the *government* could divide the realty within a taxing district into multiple sub-classifications and either apply disparate assessment ratios to the different sub-classifications, or otherwise systematically treat

them differently. Indeed, long before the decision in *Downingtown* was announced, it was an established feature of Pennsylvania uniformity jurisprudence that "all real estate is a constitutionally designated class entitled to uniform treatment and the ratio of assessed value to market value adopted by the taxing authority must be applied equally and uniformly to all real estate within the taxing authority's jurisdiction." *Westinghouse Elec. Corp. v. Bd. of Prop. Assessment, Appeals & Review of Allegheny Cnty.*, 539 Pa. 453, 469, 652 A.2d 1306, 1314 (1995) (citing *McKnight Shopping Ctr., Inc. v. Bd. of Prop. Assessment, Appeals & Review of Allegheny Cnty.*, 417 Pa. 234, 209 A.2d 389 (1965)); *see also Clifton*, 600 Pa. at 686-87, 969 A.2d at 1212 ("[T]his Court has consistently interpreted the uniformity requirement of the Pennsylvania Constitution as requiring all real estate to be treated as a single class entitled to uniform treatment."). While this may at first seem incongruous, it is the inevitable result of the circumstance that the Uniformity Clause views all property as a single class and simultaneously incorporates federal Equal Protection guarantees as a constitutional floor.

Upon review of the manner in which the *Downingtown* decision has since been applied, it appears that the following passage has led to some controversy:

> [W]hile . . . this Court has interpreted the Uniformity Clause as precluding real property from being divided into different classes for purposes of systemic property tax assessment, we do not find that this general uniformity precept eliminates any opportunity or need to consider meaningful sub-classifications as a component of the overall evaluation of uniform treatment in the application of the taxation scheme. Indeed, this would represent an impermissible departure from federal equal protection jurisprudence, which sets the floor for Pennsylvania's uniformity assessment.

*Downingtown*, 590 Pa. at 469, 913 A.2d at 200. Read against *Downingtown*'s facts, the above principle relates to the scope of evidence an aggrieved taxpayer may adduce during an assessment appeal, and concomitantly, the scope of evidence a court should

consider in determining whether the taxpayer is entitled to relief in the form of a reduced assessment. *See generally Chartiers Valley Indus. & Commercial Dev. Auth. v. Allegheny Cnty.*, 963 A.2d 587, 592 (Pa. Cmwlth. 2008). The observation that these types of proofs are relevant was intended to maintain the longstanding protection of taxpayers from high assessment ratios as compared with those of comparable properties, and to promote harmony with equal protection principles, not as a means of empowering the government to systematically engage in disparate treatment of sub-classifications of property.

The Commonwealth Court has evidently understood the pronouncement in the latter, incorrect, way. In *Weissenberger*, the Commonwealth Court relied on the passage for the position that a taxing district could, in deciding which assessments to appeal, engage in differential treatment of various sub-classifications of property as the district embarked on a years-long program of appealing assessments by property subgroup on a rotating basis. *See Weissenberger*, 62 A.3d at 506-07. Thus, the court found that the district's policy of concentrating only on apartment complexes during the relevant year did not give rise to a potential uniformity violation.

*Springfield* made this interpretation of Downingtown explicit, stating that "[t]he Uniformity Clause 'does not require equalization across all sub-classifications of real property.'" *Springfield*, 101 A.3d at 849 (quoting *Downingtown*, 590 Pa. at 469 n.9, 913 A.2d at 201 n.9). In fact, however, the *Downingtown* footnote quoted in *Springfield* had only characterized the federal Equal Protection Clause in such terms. It never indicated that the Uniformity Clause permits the government to sub-classify properties since, as even *Springfield* acknowledged, "[u]nder the Uniformity Clause, all real estate must be treated as a single class entitled to uniform treatment." *Id.* at 847 (citing *Clifton*, 600 Pa. at 686-87, 969 A.2d at 1212).

Relatedly, the *Springfield* court also addressed the standard for determining the permissibility of a government program which, in its operation, treats different property sub-classifications in a disparate manner. It acknowledged *Downingtown*'s explanation that the Uniformity Clause entails a "prevailing requirement that similarly situated taxpayers should not be *deliberately* treated differently by taxing authorities." *Downingtown*, 590 Pa. at 470, 913 A.2d at 201 (emphasis added). In this respect, *Downingtown* explained that, "[i]n this context, the term 'deliberate' *does not exclusively connote* wrongful conduct, but also includes any intentional or systematic method of enforcement of the tax laws." *Id.* at 470 n.10, 913 A.2d at 201 n.10 (emphasis added). Inexplicably, *Springfield* referenced this portion of *Downingtown* as indicating that "[t]he term 'deliberate' in this context *connotes* 'wrongful conduct,'" *Springfield*, 101 A.3d at 847 (emphasis added) – the opposite of what *Downingtown* had actually said.[13]

In view of the above, we find it useful to summarize two principles articulated in *Downingtown* and *Clifton* which are presently relevant. First, all property in a taxing district is a single class, and, as a consequence, the Uniformity Clause does not permit the government, including taxing authorities, to treat different property sub-classifications in a disparate manner. *See Clifton*, 600 Pa. at 686-87, 969 A.2d at 1212; *accord Westinghouse*, 539 Pa. at 469, 652 A.2d at 1314. Second, this prohibition applies to any intentional or systematic enforcement of the tax laws, and is not limited solely to wrongful conduct. *See Downingtown*, 590 Pa. at 470 n.10, 913 A.2d at 201 n.10 (citing *Beattie*, 589 Pa. at 119-20, 907 A.2d at 523).

---

[13] Our disapproval of *Springfield*'s interpretation of this Court's precedent should not be equated to disagreement with the result it reached. In *Springfield*, the property owners challenged a school district's policy of using of a monetary threshold to decide which properties to appeal. *See id.* They did not allege a scheme involving disparate treatment of property sub-classifications drawn according to property type or the status of its owner as a resident or non-resident of the taxing district.

Here, Appellants argue that the School District has undertaken an approach which systematically treats commercial properties differently from other types of parcels, most notably single-family homes. They assert that, while 80 percent of such homes in the district are under-assessed – and that the assessment ratio of many of those homes departs from the CLR by an even greater percentage than the assessment ratios of Appellants' properties – the School District has chosen, for financial and political reasons, to ignore single-family homes and concentrate only on commercial properties. *See* Complaint at 10-13, ¶¶42-44, 52-53 (reflecting allegations to this effect). Appellants indicate that, even though the appeals are aimed at conforming their assessments to the CLR, uniformity is harmed when appropriately assessed properties bear the tax burden for under-assessed properties.

To the extent enhanced tax revenue is a driving motivation, Appellants proffer that the School District has neutral, non-discriminatory ways of increasing revenue, including appealing assessments proportionally by property type rather than only targeting commercial properties, raising the millage rate, or pressuring the County, through litigation if necessary, to undertake a countywide reassessment. *See, e.g., City of Lancaster*, 143 Pa. Cmwlth. at 499-500, 599 A.2d at 301 (ordering a countywide reassessment in response to a complaint by taxing districts).

Several economics professors, as *amici* supporting reversal, add that the School District's strategy results in a higher effective tax rate for apartment complexes than for single-family homes, which they say is regressive because at least part of the increased tax burden is passed on to renters, who are generally poorer than single-family homeowners. *See* Brief of *Amici* Dr. Jesus Fernandez-Villaverde, *et al.*, at 4-6. In a similar vein, another *amicus* supporting reversal discusses alleged instances where raised assessments – agreed to in settlement by the property owner so as to avoid

additional litigation costs notwithstanding a favorable ruling by the board of assessment appeals – led to higher rents which, in turn, forced poorer residents out of the apartments. *See* Brief of *Amicus* Pennsylvania Apartment Association, at 2-3.[14]

The School District responds that its practice is constitutionally permissible because the sub-classification it has created is neither arbitrary nor capricious, but is based on reasonable economic and financial objectives involving the raising of public revenue and the prospect of recouping its appeal costs. That being the case, the district continues, Appellants' allegations do not give rise to a uniformity violation as a matter of law.[15]

The School District additionally forwards an absurd-results argument, indicating that if it is prevented from taking these financial considerations into account when deciding which assessments to appeal, it would have to appeal every under-assessed property in the district, which is impossible as a practical matter and, thus, cannot have been what the Legislature intended when it enacted the Assessments Law. Separately, the district maintains Appellants have requested the wrong relief, as they have asked for an injunction to prevent it from exercising its rights under Section 8855 rather than seeking a countywide reassessment.

Several *amici* favoring affirmance observe that assessment appeals, whether by a taxing authority or an individual property owner, always enhance uniformity by lowering the coefficient of dispersion (the "COD") – that is, the average variance from

---

[14] Additional *amicus* briefs favoring reversal have been submitted by King of Prussia Associates, Pennsylvania Retailers' Association, Brandywine Realty Trust, and several business associations led by the Pennsylvania Chamber of Business and Industry. They argue that targeting commercial properties results in economic harm to the region.

[15] In making this argument the School District relies on various Commonwealth Court decisions. While we may consider those decisions, they do not bind us. *See Six L's Packing Co. v. WCAB (Williamson)*, 615 Pa. 615, 630, 44 A.3d 1148, 1157 (2012).

the common assessment ratio in a district. *See Beattie*, 589 Pa. at 131 n.7, 907 A.2d at 530 n.7 ("A low [COD] . . . indicates that the parcels under consideration are being assessed at close to an equal rate."). They conclude Appellants' complaint was deficient because it did not aver that the School District's actions would increase the COD. *See* Brief of *Amicus* Pennsylvania Economy League at 7; Brief of *Amici* Crestwood Area School District, *et al.*, at 18, 27; *see also id.* at 5-13 (arguing that all assessment appeals enhance uniformity, and hence, it is a failure to appeal which perpetuates any non-uniformity extant in a taxing district).[16]

Initially, we reject the School District's suggestion that the only alternative to its alleged course of action is to appeal all property assessments in the district. There are other, nondiscriminatory, methods of deciding which properties to appeal. Insofar as the School District argues Appellants were required to demand a countywide reassessment or nothing at all, the district grounds this concept on the ruling in *Smith v. Carbon County Board of Assessment Appeals*, 10 A.3d 393 (Pa. Cmwlth. 2010). *Smith* – which in any event is not binding, *see supra* note 15 – is not directly apposite to the present matter. It pertained to a single property and did not involve any allegation along the lines of that made by Appellants here regarding intentional, systemic disparate treatment of a sub-classification of properties.

More centrally, we are not persuaded that the conventional rational-basis standard advanced by the School District, a common feature of equal protection

---

[16] Other school districts have also filed *amicus* briefs favoring affirmance, as has the Pennsylvania School Boards Association. These *amici* generally emphasize the importance of upholding taxing districts' Section 8855 right to appeal assessments as a means of ensuring the availability of adequate revenues. One group of school districts also dispute the concept that a higher assessment will lead to raised rents. They argue that rents are determined by market forces alone. *See* Brief of *Amici* Allentown School District *et al.*, at 2.

jurisprudence, applies in a dispute such as this.  In *Clifton* the Court initially acknowledged the General Assembly's power to classify, even in matters of taxation, so that a taxpayer generally must demonstrate that the classification "is unreasonable and not rationally related to any legitimate state purpose."  *Clifton*, 600 Pa. at 685, 969 A.2d at 1211 (citing *Wilson Partners, L.P. v. Bd. of Fin. & Revenue*, 558 Pa. 462, 471, 737 A.2d 1215, 1220 (1999)).  Importantly, the Court then cautioned that property taxes are "different" because "real property **is** the classification," *id.* at 686, 969 A.2d at 1212 (emphasis in original), with the consequence, stated above, that all real estate in a taxing district is constitutionally entitled to uniform treatment.  *See id.* at 686-87, 969 A.2d at 1212 ("[T]his Court has consistently interpreted the uniformity requirement of the Pennsylvania Constitution as requiring all real estate to be treated as a single class entitled to uniform treatment."); *id.* at 707, 969 A.2d at 1224 (reaffirming that "all property must be taxed uniformly, with the same ratio of assessed value to actual value applied throughout the taxing jurisdiction").

*Clifton* recognized the above-quoted passage of *Downingtown* as suggesting this Court has "retreated from such an absolutist approach" eschewing subdivision in all contexts, *id.* at 688, 969 A.2d at 1212-13 – and, indeed, the School District interprets that aspect of *Clifton* as having opened the door to governmental sub-classifications. *See* Brief for Appellees at 23.  As we read *Clifton*, however, it properly understood the limited significance of the "meaningful sub-classifications" phraseology in *Downingtown* as relating solely to evidence which a court may consider in the context of an individual assessment appeal.  To the extent any other interpretation can be gleaned from *Clifton*, it is *dicta*, as *Clifton* itself found a uniformity violation where a facially constitutional law,

as applied, gave rise to differing assessment ratios for different sub-classifications of property.  *See Clifton*, 600 Pa. at 702-03, 969 A.2d at 1221-22.[17]

From the two *Downingtown/Clifton* precepts we have discussed – that all real estate in a taxing district forms a single collective class to be treated uniformly, and that systematic disparate enforcement of the tax laws based on property sub-classification, even absent wrongful conduct, is constitutionally precluded – it follows that a taxing authority is not permitted to implement a program of only appealing the assessments of one sub-classification of properties, where that sub-classification is drawn according to property type – that is, its use as commercial, apartment complex, single-family

---

[17] In a separate portion of the *Downingtown* opinion, the Court found a statutory provision unconstitutional because, in its operation, it led to two groups of properties being subject to different assessment ratios.  The Court indicated that the distinction was "arbitrary" because it was not based on any "legitimate distinction" between the targeted sub-class and all other properties.  *Downingtown*, 590 Pa. at 475, 913 A.2d at 205.  The School District presently seizes on this language as supposedly engrafting onto uniformity jurisprudence a new rule whereby sub-classifications are permitted so long as they are not "arbitrary."  *See* Brief for Appellees at 22, 40, 42.

As Appellants argue, the School District's position reflects a substantial misreading of *Downingtown*.  *Downingtown* correctly stated a standard emanating from the Equal Protection Clause – the precepts of which, again, are incorporated into the Uniformity Clause – and held that the statute failed that standard.  It would be improper to infer that that holding as stated somehow overrides the established principle that the Uniformity Clause precludes *all* sub-classifications of real estate within a taxing district.  Drawing such inference, as the School District attempts to do here, is directly contrary to the remainder of the *Downingtown* opinion, which affirmed that equalization of the assessment ratio of *all* property within a district was "of the essence of equalization, and thus, uniformity."  *Downingtown*, 590 Pa. at 468, 913 A.2d at 200 (citing *Woolworth*, 426 Pa. at 587, 235 A.2d at 795).  Indeed, this latter precept is consistent with long-established uniformity jurisprudence, *see, e.g.*, *In re Lower Merion Twp.*, 427 Pa. 138, 143, 233 A.2d 273, 276 (1967) (clarifying that "real estate as a subject for taxation may not validly be divided into different classes"); *see also id.* at 143-47, 233 A.2d at 276-78 (developing that this constitutional tenet has been in place since 1909 and reaffirmed by this Court on multiple occasions), and this Court plainly had no intention of discarding it.

residential, industrial, or the like. We do not overlook that Section 8855 gives the School District a statutory right to appeal assessments; our point is that this alone cannot justify an action which the Uniformity Clause prohibits.[18] The restrictions imposed by that aspect of our organic law limit the manner in which otherwise legitimate statutory powers may be utilized in practice. *See Downingtown*, 590 Pa. at 474-75, 913 A.2d at 204 (confirming that demands of uniformity take precedence over statutory requirements (quoting *Brooks Building*, 391 Pa. at 101, 137 A.2d at 276)); *see also Alco Parking Corp. v. City of Pittsburgh*, 453 Pa. 245, 254-55, 307 A.2d 851, 856 (1973) (reciting that the Commonwealth and its political subdivisions are subject to uniformity requirements when they exercise their taxing powers), *rev'd on other grounds*, 417 U.S. 369, 94 S. Ct. 2291 (1974); *Del. L. & W. R. Co.*, 224 Pa. at 243-44, 73 A. at 430 (noting that tax uniformity principles, which require substantial tax equality, apply to the Legislature, the courts, and taxing authorities).

As noted, some of the School District's *amici* proffer that Appellants' pleadings were insufficient in that all assessment appeals reduce the COD and, in that sense, enhance uniformity. This argument overlooks that the Uniformity Clause can be independently harmed by a systematic course of disparate treatment relative to a

---

[18] To illustrate, Appellants offer that, notwithstanding the right embodied in Section 8855, the School District could not constitutionally exercise its statutory authority to systematically appeal only the assessments of properties owned by racial minorities, or by persons who have criticized the school board. *See* Brief for Appellants at 37. These examples involve wrongful conduct, unlike differential treatment for economic reasons. Indeed, the only averment in the complaint of a similar nature is the allegation relating to an improper political motivation on the part of the School District. Regardless, these examples highlight that, although Section 8855 may be facially valid, that alone does not shield the government from as-applied challenges. In this regard, we reject the suggestion that there is a constitutionally meaningful distinction between the authority to set or revise assessments, and the statutory right to appeal assessments. *See Valley Forge Towers*, No 2014-09870, *slip op.* at 3; *see also Valley Forge Towers*, 124 A.3d at 367 (quoting *Weissenberger*, 62 A.3d at 508-09).

particular sub-classification of property. *See, e.g.*, *Lower Merion Twp.*, 427 Pa. at 146-47, 233 A.2d at 277-78; *City of Lancaster*, 143 Pa. Cmwlth. at 495, 599 A.2d at 299. Although the aim of every such appeal is to conform the property's assessment with the CLR, the members of the sub-class are aware that they alone have been targeted for scrutiny solely due to their membership in the sub-class; moreover, they alone must bear the costs of defending against the appeal and of any follow-up litigation in court – costs which the School District and its *amici* take pains to emphasize are quite substantial. *See* Appellees' Supplemental Brief Regarding the Applicability of Mount Airy #1, LLC v. Pennsylvania Department of Revenue, at 8-9; Brief of *Amici* Crestwood Area School District, *et al.*, at 29 (enumerating appeal costs such as appraiser fees, expert witness fees, filing fees, and attorney fees).

Further, the alleged political motivation, being an assertion of fact, *contra* Brief for Appellees at 37 n.20, must be accepted as true for present purposes. It should go without saying that the Uniformity Clause prohibits disparate treatment of sub-classifications of property in order to avoid political accountability. *See generally Downingtown*, 590 Pa. at 470, 913 A.2d at 201 (recognizing the potential for "discrimination by local officials among similarly situated property owners who are underrepresented in the general population"). It bears emphasis that there is no evidentiary record and, hence, no indication that the School District has, in fact, discriminated on this basis. As well, such motivation may be difficult to prove. Regardless, it is alleged in the complaint and, if demonstrated, would establish a uniformity violation. Therefore, Appellants are entitled to an opportunity to prove it.

We pause at this juncture to clarify that nothing in this opinion should be construed as suggesting that the use of a monetary threshold – such as the one challenged in *Springfield* – or some other selection criteria would violate uniformity if it

were implemented without regard to the type of property in question or the residency status of its owner.[19]  Such methodologies are not presently before the Court.

Finally, we observe that the limitations on disparate treatment imposed by the Uniformity Clause are not merely formal or abstract in nature.  Although using public funds wisely and obtaining needed revenues are important objectives, salutary governance also requires attention to other substantive aims.  The government must be concerned with ensuring a rough equalization of tax burdens under a structure in which taxes are imposed, adjusted, and collected equitably.  Thus, as "every tax is a burden," *Del. L. & W. R. Co.*, 224 Pa. at 243, 73 A. at 430, it is important that the public has confidence that property taxes are administered in a just and impartial manner, with each taxpayer contributing his or her fair share of the cost of government.  This lends legitimacy to the property-tax system in the eyes of the public which, in turn, tends to suppress both the desire to evade taxes and the tendency to embark upon protracted litigation – which, itself, consumes large quantities of societal resources.  Where there is a conflict between maximizing revenue and ensuring that the taxing system is implemented in a non-discriminatory way, the Uniformity Clause requires that the latter goal be given primacy.  *Cf. Clifton*, 600 Pa. at 713, 969 A.2d at 1228 (indicating that rough uniformity in property assessment may not be submerged to the "legitimate governmental interest in creating and preserving a stable and predictable local real estate tax assessment system").  Notably, however, the two objectives do not necessarily conflict.

---

[19] In *Springfield* the school district only appealed properties for which a recent sales price was at least $500,000 greater than its implied market value, defined as the assessed value divided by the CLR.  Thus, with a CLR of, say, 83%, a parcel assessed at $1,000,000 would have an implied market value of $1,204,819 ($1,000,000 divided by 0.83).  The school district would appeal the $1,000,000 assessment if the property had recently sold for at least $1,704,819 – the implied market value plus $500,000.

The particular appeal policy employed by a taxing district lies within its discretion. Our task is limited to enforcing the constitutional boundaries of any such approach, and our holding here is limited to the conclusion that the appeal policy Appellants have alleged – in terms of its classification of properties by type and/or the residency status of their owners – transgresses those boundaries. Accordingly, Appellants' complaint sets forth a valid claim that the School District's appeal policy violates the Uniformity Clause.

## IV. Conclusion

For the reasons given above, the School District's preliminary objections should not have been sustained. The order of the Commonwealth Court is accordingly reversed and the matter is remanded for further proceedings.

Justices Baer, Todd, Donohue, Dougherty, Wecht and Mundy join this opinion.