**[J-52-2022] [OISA: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| GM BERKSHIRE HILLS LLC AND GM OBERLIN BERKSHIRE HILLS LLC, | : | No. 16 MAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| Appellants | : | Commonwealth Court at No. 930 CD |
| | : | 2020 dated July 8, 2021 Affirming |
| | : | the Order dated August 18, 2020 by |
| v. | : | the Berks County Court of Common |
| | : | Pleas, Civil Division, at No. 18- |
| | : | 18627 |
| BERKS COUNTY BOARD OF | : | |
| ASSESSMENT AND WILSON SCHOOL | : | ARGUED:  September 15, 2022 |
| DISTRICT, | : | |
| | : | |
| Appellees | : | |

## OPINION IN SUPPORT OF REVERSAL

**JUSTICE DONOHUE**                              **DECIDED:  February 28, 2023**

I would reverse the Commonwealth Court's order.

One hundred and twenty-three years ago, this Court described the Uniformity

Clause of our Charter[1] in simple and elegant words:

> While every tax is a burden, it is more cheerfully borne when
> the citizen feels that he is only required to bear his
> proportionate share of that burden measured by the value of
> his property to that of his neighbor.  This is not an idle thought
> in the mind of the taxpayer, nor is it a mere speculative theory
> advocated by learned writers on the subject;  but it is a

---

[1] Uniformity Clause, Article VIII, Section 1 provides:

> All taxes shall be uniform, upon the same class of subjects,
> within the territorial limits of the authority levying the tax, and
> shall be levied and collected under general laws.

Pa. CONST. art. VIII, § 1.

> fundamental principle written into the Constitutions and statues of almost every state in this country. In Pennsylvania the framers of the new Constitution embodied this principle in our organic law in terms so plain that no one should misunderstand its meaning or doubt its application, and the people by the adoption of that instrument placed the seal of their approval upon a system of taxation which has for its corner stone uniformity in the value, levy, and collection of all taxes.

*Delaware, L. & W.R. Co.'s Tax Assessment*, 73 A. 429, 430 (Pa. 1909).

Today, the Opinion in Support of Affirmance ("OISA") disregards the cornerstone of the Uniformity Clause by placing its imprimatur on a blatant subclassification of property for tax assessment appeal purposes. As a result, a citizen has no reason to feel that he is bearing his proportionate share of the tax burden measured by the value of his property to that of his neighbor, and the promise of the Uniformity Clause has been broken.

The Wilson School District (the "School District"), located in Berks County, passed a resolution in 2018 to establish a method for selecting property assessments to appeal, implementing a policy under which a property's assessment would be appealed if it was both recently sold and appeared to be underassessed by at least $150,000. The OISA explains that these are two reasonable grounds for selecting which properties to appeal, highlighting, inter alia, the School District's "consideration [of] the real-world costs" and "the practical limitations on the information available to it[.]" OISA at 10. However, the question we are asked to answer today is not whether the motivations for the School District's property selection policy are sound or reasonable, but whether the policy is constitutional. To the best of my knowledge, there is no reasonableness exception to the Uniformity Clause.

As the OISA explains, under the Consolidated County Assessment Law (the "Assessment Law"),[2] taxing districts, including school districts, are authorized to appeal the assessment of properties within their boundaries if they believe the assessment is too low. 53 Pa.C.S. § 8802 (defining "taxing districts" to include school districts); *id.* § 8855 (authorizing such appeals by taxing districts). Although taxing districts have discretion to decide which assessments to appeal, the manner in which that discretion may be exercised is limited by the Uniformity Clause of the Pennsylvania Constitution.

With regard to property taxation, we have explained:

> First, all property in a taxing district is a single class, and, as a consequence, the Uniformity Clause does not permit the government, including taxing authorities, to treat different property sub-classifications in a disparate manner. Second, this prohibition applies to any intentional or systematic enforcement of the tax laws, and is not limited solely to wrongful conduct.

*Valley Forge Towers Apartments N, LP v. Upper Merion Area Sch. Dist.*, 163 A.3d 962, 975 (Pa. 2017) (citations omitted). As such, this Court has invalidated assessment appeal policies that rely upon the creation of such subclassifications. For example, in *Valley Forge Towers*, we explained that "a taxing authority is not permitted to implement a program of only appealing the assessments of one subclassification of properties, where that subclassification is drawn according to property type—that is, its use as commercial, apartment complex, single-family residential, industrial, or the like." *Id.* at 978. In regard to the allegation that the school district in *Valley Forge Towers* targeted commercial properties with out-of-district owners to avoid political accountability from local residential property owners, we also reiterated that "the Uniformity Clause prohibits disparate treatment of subclassifications of property in order to avoid political accountability." *Id.* at 979 (citing *Downingtown Area Sch. Dist. v. Chester Cnty. Bd. of Assessment Appeals*,

---

[2] Act of Oct. 27, 2010, P.L. 895, No. 93, § 2 (as amended 53 Pa.C.S. §§ 8801-8868).

913 A.2d 194, 201 (Pa. 2006) (recognizing the potential for "discrimination by local officials among similarly situated property owners who are underrepresented in the general population")). Further, in *Clifton v. Allegheny County*, 969 A.2d 1197 (Pa. 2009), this Court rejected a policy that had the effect of discriminating based upon the neighborhood in which the property was located.

As noted above, the School District policy requires that a property be selected for assessment appeal if: (1) it was recently sold as shown by data provided by the State Taxation Equalization Board (the "STEB"),[3] and (2) it appeared to be underassessed by at least $150,000, i.e., if the recent sales price times the common-level ratio (the "CLR") (here, 0.685) minus the current assessed value was at least $150,000. Put differently, the School District first categorizes those properties targeted for assessment appeal based upon their newly-purchased status. The School District then further subdivides this class of properties based upon their sale price, appealing the assessments of such properties if they appear to be underassessed by at least $150,000. This requirement for a rigid $150,000 minimum difference necessarily targets properties based on their sale price. Accordingly, I fail to see how the School District's policy does not create an unconstitutional subclass of properties, which can be described as "properties recently purchased at a price exceeding an established threshold."

In my view, neither of the above categorizations employed by the School District passes constitutional muster, either when considered individually or in tandem. In this regard, the Commonwealth Court found that the selection process here materially differed from that which we rejected in *Valley Forge Towers*, explaining:

---

[3] The STEB, which was established by the State Tax Equalization Board Law, *see* 71 P.S. §§ 1709.1500-1709.1521, compiles data showing the prices at which real property in each school district has been sold. *See* 71 P.S. § 1709.1508.

There is a difference, however, between selection based on property type, a qualitative approach that *Valley Forge Towers* bars, and selection based on recent sales prices, which are quantitative and reflective of a property's accurate present value regardless of its type. Because the [School] District's method is purely quantitative in nature, beginning with type-neutral listings of recent sales transactions in the monthly STEB reports, we find it does not present the type of constitutional infirmities present in *Valley Forge Towers*.

*GM Berkshire Hills LLC v. Berks Cnty. Bd. of Assessment*, 257 A.3d 822, (Pa. Commw. 2021). The OISA appears to endorse this reasoning, stating:

What the Uniformity Clause does prohibit is the systemic differential treatment of a subclass of property defined, for example, by property type or residency status of the owner (*Valley Forge Towers*), or by neighborhood (*Clifton*). These types of factors are prohibited because their use creates property subclasses. Use of monetary figures and recent sales data is qualitatively different. Every property in a given taxing district can be bought and sold, and when that occurs a sales price is associated with the property. A sales price thus has two features making its use consistent with uniformity: it is not unique to one subset of property within the district; and as long as the transaction is undertaken at arm's length, it reflects the property's fair market value, an important piece of evidence in determining whether the property's assessment ratio varies widely from the norm.

OISA at 10 (footnote omitted). Apparently recognizing that what it has explained (and endorsed) is a subclassification of properties, the OISA goes on to explain that the School District is "seek[ing] to take into consideration the real-world costs of lodging an assessment appeal, together with the practical limitations on the information available to it concerning the fair market values of the properties within its borders[,]" and notes that "[t]here is nothing in our decisional law that prohibits this type of methodology, and *Valley Forge Towers* strongly suggested the Uniformity Clause would permit it." *Id.* In other words, even if it looks like a subclassification and sounds like a subclassification, it isn't one if we say it isn't.

However, in *Valley Forge Towers*, we neither created nor employed any such "qualitative vs. quantitative" distinction. It is true that we, in unfortunate dicta, commented on the potential propriety of a purely monetary threshold in *Valley Forge Towers*. However, we have never decided whether such thresholds are permissible under the Uniformity Clause. In *Valley Forge Towers*, we tempered the nonjudicious comment by stating that our decision was limited to the issue before us:

> We pause at this juncture to clarify that nothing in this opinion should be construed as suggesting that the use of a monetary threshold—such as the one challenged in *Springfield*[4]—or some other selection criteria would violate uniformity if it were implemented without regard to the type of property in question or the residency status of its owner. Such methodologies are not presently before the Court.

*Valley Forge Towers*, 163 A.3d at 979 (footnote omitted). Any implication drawn from the discussion is non-binding dicta. *See, e.g.*, *Castellani v. Scranton Times, L.P.*, 124 A.3d 1229, 1243 n.11 (Pa. 2015) (explaining that dicta is an opinion by a court "that is not essential to the decision," which "has no precedential value" even when it relates to "a question that is directly involved, briefed, and argued by counsel, and even passed on by the court"). *Valley Forge Towers*, consistent with our prior precedent, barred the systematic differential treatment of a subclass of property based upon the avoidance of

---

[4] In *Springfield*, the school district employed a methodology similar to that at issue here, only appealing properties for which a recent sales price was at least $500,000 greater than its implied market value (defined as the assessed value divided by the CLR). *In re Springfield Sch. Dist.*, 101 A.3d 835 (Pa. Commw. 2014). We explained in *Valley Forge Towers* that our disapproval of *Springfield* was based on, inter alia, the *Springfield* court's improperly requiring that the challengers prove wrongful conduct on the part of the school district. *Valley Forge Towers*, 163 A.3d at 975. In this regard, we twice indicated in *Valley Forge Towers* that our opinion did not reflect disapproval of the monetary method employed by the school district in *Springfield*. *Id.* at 975 n.13 & 979. However, we have also never approved of such methodology, and the Commonwealth Court's precedent in this regard (i.e., *Springfield*) is not binding on this Court. Not disapproving the methodology is not the equivalent of giving approval.

political accountability, the "type" or use of the property and/or "the residency status of [the property's] owners." *Valley Forge Towers*, 163 A.3d at 980.

It is patent that selecting only newly purchased properties for an assessment appeal creates a subclassification of properties because this subclassification excludes the vast majority of properties in the school district.[5] A newly purchased townhouse, identical to the townhouse of a neighbor in a contemporaneously built development will be subject to an assessment appeal and the neighboring townhouse will not. The owner of the recently purchased townhouse bears a disproportionate share of the tax burden in contravention of the Uniformity Clause.

Other than saying it is so, the OISA cannot explain in a principled way why such a "newly-purchased" subclassification is materially different from impermissible subclassifications such as property type, use or location in a certain neighborhood. For example, the fact that a property is recently sold is not a neutral factor simply because, as the OISA states, "[e]very property in a given taxing district can be bought and sold." OISA at 10. As indicated above, when addressing a Uniformity Clause challenge such

---

[5] Moreover, I am skeptical as to whether a purely monetary threshold based on a rigid figure (i.e., the $150,000 threshold employed by the School District) can comport with our Uniformity Clause jurisprudence. Such thresholds could easily serve as methods of circumventing our holdings in cases such as *Clifton* and *Valley Forge Towers*, as they could be set at amounts that would largely target only certain neighborhoods (i.e., those known to contain more expensive homes), property uses (large apartment buildings vs. small single-family homes), or types (commercial vs. residential). Under both *Clifton* and *Valley Forge Towers*, such pretextual thresholds would run afoul of the Uniformity Clause, regardless of whether they were intentionally created. *See Clifton,* 969 A.2d at 1227-29 (holding that although appeal policy did not expressly discriminate based on neighborhood, application of it led to pervasive disparities that violated Uniformity Clause); *Valley Forge Towers*, 163 A.3d at 975 (barring discriminatory policies based on property use and/or type). As such, blanket allowance of rigid monetary thresholds could violate uniformity, while general allowance would require courts to constantly draw lines based upon whether the record demonstrates that the monetary threshold is a mere pretext, either by design or in its impact.

as the present one, we are not concerned with the intention of a selection criteria, but with its impact. *See Clifton,* 969 A.2d at 1227-29 (invalidating appeal policy based on the pervasive disparities across neighborhoods in the policy's application).

The School District maintains that "sales price is a criteria that applies universally to all property types, and is the best, most objective evidence a taxing body can rely upon when identifying underassessed parcels." School District's Brief at 8-9. However, a sales price does not apply "universally" to all property in the district. *See Valley Forge Towers*, 163 A.3d at 974 ("[A]ll property in a taxing district is a single class, and, as a consequence, the Uniformity Clause does not permit the government, including taxing authorities, to treat different property subclassifications in a disparate manner."). Rather, only properties that have been recently sold will have a sale price. Further, a sale price is not only reliable "objective evidence" related to the property sold; it also serves as an indicator of the market value of all similar properties in the taxing district. However, in identifying properties to appeal, the School District only employs this "objective evidence" to target the newly-sold property itself and makes no effort to extrapolate from that sale price what common sense dictates regarding the value of comparable neighboring properties.

The School District further maintains that such properties are the only ones appropriate for assessment appeal due to the nature of such appeals. The School District notes that "a taxing body such as a school district has no legal right to demand access to a property or request financial records available to property owners to determine a property's value." School District's Brief at 9. The School District essentially argues that as such, it cannot bring assessment appeals in a manner that does not depend on newly-purchased status, relying on the following summary of the testimony of Attorney John Miravich, solicitor for the School District:

> [Attorney Miravich] explained that a school district – and the attorney filing an assessment appeal on a school district's

behalf – must have a good faith basis for doing so: "[A]s an officer of the court, I can't reasonably feel like I can file an assessment appeal and take a matter to the assessment board for them to make a decision, unless I have some factual basis for that." As a result, the [School] District is limited to the STEB reports, which constitute a compilation of information tied to the Recorder of Deeds, and any other public information that may be available, such as internet postings regarding the recently sold property.

*Id.* at 3 (internal citations omitted).

These concerns are self-serving. A taxing authority is given substantial leeway and power in initiating assessment appeals, power that the School District readily relies upon later in its brief to support the appeal policy at issue here. *See id.* at 12-13 (citing, inter alia, *Springfield*, 879 A.2d at 341 (observing that the Assessment Law "contains no limits on the process by which school districts decide to appeal")). Further, the above testimony of Attorney Miravich implicitly concedes that a host of other publicly available information is available to the School District. However, as explained above, the School District defaults to the sales price of newly-purchased properties, only appealing the assessments of such properties if, essentially, the sales price is high enough and without regard for what that sales price implies about surrounding properties. Targeting such recently-sold properties for disparate treatment simply because the School District has received this single new data point of information regarding those properties is precisely the type of policy that our jurisprudence, such as *Valley Forge Towers* and *Clifton*, has prohibited under the Uniformity Clause.

As an additional matter, in regard to the overall fairness of the School District's policy, the OISA suggests that application of the CLR mitigates any unfairness to Taxpayers and actually increases uniformity. Specifically, the OISA states:

We reiterate, though, that the subject property's valuation has been raised so that its assessment ratio conforms with the CLR. It has not been raised to the purchase price of the property, which was $54 million. Unless there is a systemic

deficiency where the CLR does not in fact represent the average assessment ratio of the properties in the district, the subject property's assessment has been adjusted to become as uniform as possible with the properties in the district as a whole.

OISA at 13.

However, we rejected this position in *Valley Forge Towers*:

Although the aim of every such appeal is to conform the property's assessment with the CLR, the members of the sub-class are aware that they alone have been targeted for scrutiny solely due to their membership in the sub-class; moreover, they alone must bear the costs of defending against the appeal and of any follow-up litigation in court— costs which the [s]chool [d]istrict and its amici take pains to emphasize are quite substantial.

*Valley Forge Towers*, 163 A.3d at 979. Put simply, although application of the CLR may be intended to bring a certain property's valuation into line with the rest of the taxing district, application of the CLR is not the saving grace that the OISA finds it to be, as it cannot mitigate the constitutional infirmity of a taxing district's policy if that policy relies on impermissible subclassification(s) to select properties for appeal.[6]

As a final matter, it was suggested at oral argument that if the School District's current property-selection method is unconstitutional, then no method is constitutional. Understandably, the School District takes a narrow view of the assessment appeal process, focusing on the revenue-raising potential of each individual appeal.[7] To be clear,

_____

[6] In addition, application of the CLR is simply not relevant to the type of Uniformity Clause challenge raised by Taxpayers, which is based on the existence of an impermissible subclassification in the School District's property-selection process. As the OISA recognizes at the outset, *see* OISA at 7-8, Taxpayers have not raised any challenge based on the amount of their property valuation, which would implicate the CLR.

[7] Regarding the issue of revenue generation, we have said:

Where there is a conflict between maximizing revenue and ensuring that the taxing system is implemented in a non-discriminatory way, the Uniformity Clause requires that the

(continued…)

all of our assessment appeal jurisprudence has its genesis in a taxing authority's need to generate revenue to pay for the many kinds of services they are required to provide, including for school districts, funding public education. The reason for devising methods to selectively appeal property assessments is to avoid the politically undesirable alternative of raising the millage for all property owners. Ultimately, the decision by county government not to conduct regular reassessments drives the need to selectively target properties for tax appeals. Under the Uniformity Clause, the lack of political will to address under-assessment of properties and the concomitant shortfall in tax revenue does not permit non-uniform treatment of properties and the resultant disproportionate taxation. The property assessment scheme employed by the School District creates a subclassification of property in violation of the Uniformity Clause. Thus, I would reverse the Commonwealth Court's order.

Chief Justice Todd and Justice Dougherty join this opinion in support of reversal.

---

latter goal be given primacy. *Cf. Clifton*, 600 Pa. at 713, 969 A.2d at 1228 (indicating that rough uniformity in property assessment may not be submerged to the "legitimate governmental interest in creating and preserving a stable and predictable local real estate tax assessment system").

*Valley Forge Towers*, 163 A.3d at 980.