# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Punxsutawney Area School District | : | |
| | : | |
| | : | |
| v. | : | No. 1209 C.D. 2018 |
| | : | Argued: October 3, 2019 |
| Broadwing Timber, LLC, | : | |
| Appellant | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**              **FILED: October 29, 2019**

Broadwing Timber, LLC (Broadwing) appeals from the Order of the Court of Common Pleas of Jefferson County (common pleas) that granted the tax assessment appeal of the Punxsutawney Area School District (District) and directed the reassessment of Broadwing's properties in accordance with the District's appraisal evidence. On appeal, Broadwing argues the District's process of deciding which properties' tax assessments to appeal violates the Uniformity Clause of the Pennsylvania Constitution[1] and the Supreme Court's recent decision in *Valley Forge Towers Apartments N, LP v. Upper Merion Area School District*, 163 A.3d 962, 969 (Pa. 2017). Broadwing asserts that, in contravention of *Valley*

---

[1] "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." PA. CONST. art. VIII, § 1.

*Forge*, the District has no formal policy or defined criteria for evaluating what properties to appeal and the ad hoc, arbitrary method the District has been using results in appeals only of commercial and/or commercially-operated properties. This, Broadwing maintains, creates an impermissible sub-classification of properties. Upon review, we affirm.

## I. Background

### A. *Broadwing's Property and District's Initial Tax Assessment Appeal*

Broadwing owns 18 parcels, totaling 2596.587 acres of land (collectively, Property), which are situated entirely in Jefferson County (County) and the District.[2] The Property is used as an investment for Broadwing's investors, which are pension plans. Timberland Investment Resources (Timberland) oversees, on Broadwing's behalf, the planting and harvesting of timber on the Property, and leases the Property for recreational and hunting purposes. The District filed an appeal of the tax assessment of the Property, asserting the Property was underassessed. At the time of the District's appeal, the Property's combined assessed value was $218,620. (Reproduced Record (R.R) at 287a.) After a hearing, the Jefferson County Board of Assessment Appeals (Board) issued a decision indicating there would be no change to the Property's assessment. (*Id.* at 12a.) On November 10, 2016, the District appealed the Board's decision.

---

[2] The Property is also partially located in Winslow Township, Henderson Township, and McCalmont Township. Winslow Township is not participating in this appeal, and McCalmont Township is precluded from participating due to its failure to file a brief. Henderson Township and the County join in the District's brief.

2

B.       *Proceedings Before Common Pleas*

After a lengthy procedural history not relevant to the disposition of the issues before the Court, the District's case moved forward after the Supreme Court decided *Valley Forge*. In *Valley Forge*, our Supreme Court held that tax assessment appeals that deliberately target only commercial properties create an impermissible subclass of taxpayers or properties, resulting in an unconstitutional non-uniformity of taxes. 163 A.3d at 975. Relying on *Valley Forge*, Broadwing asserted the District "was seeking reassessment based on a policy or practice that violated the Uniformity Clause." (Common Pleas' Opinion (Op.), Aug. 2, 2018, at 1.)

Common pleas held a bench trial, at which the District presented documentary evidence and the testimony of Susan Robertson, its business administrator and the secretary of the District's School Board (Business Administrator), and Richard J. Drzewiecki, a certified real estate appraiser (Appraiser). Broadwing presented documentary evidence and the testimony of Timberland's director of real estate, and cross-examined Business Administrator.

Appraiser testified as to the methods he used to determine the Property's value. Based on his review, Appraiser opined the Property should be assessed at $1309 per acre, for a total assessment of $3.4 million. Broadwing did not cross-examine Appraiser or offer evidence to rebut his expert opinion.

Business Administrator testified as follows. She has held her position since 2007, and she is responsible for all of the District's financial concerns. (R.R. at 76a-77a.) As part of her duties, she receives checks from the County on a monthly basis for the District's portion of realty transfer taxes paid for that month. (*Id.* at 79a.) Business Administrator also receives a "check detail" listing the individual

transfers, which she reviews shortly after receipt.  (*Id.* at 78a.)  Due to the fact that most transfers of property within the District result in realty transfer tax revenue of less than $1000, she notices when there is an amount larger than the norm.  (*Id.* at 79a-80a.)

Using this process, Business Administrator noticed a realty transfer tax payment in the amount of $25,375.43 in November 2014 from the sale of a property to Continuum Properties, LLC.  (*Id.* at 80a.)  Without considering the type of property involved or who the owner of the property was, she performed calculations, set forth in a spreadsheet, to determine what potential increase in revenue could be realized from the reassessment of this property, the sale price of which she calculated to be around $5 million.  (*Id.* at 80a-82a.)  Business Administrator then presented her work to the District's superintendent and solicitor.  (*Id.* at 81a-82a.)  After review, the three of them agreed that the monetary benefit of the potential tax increase outweighed the likely costs of the tax assessment appeal.  (*Id.*)  The issue was presented to the School Board for its approval of the District's filing a tax assessment appeal.  Following discussion on this potential appeal and other potential appeals at School Board meetings, the School Board ultimately approved the retention of outside counsel to prosecute such appeals.

Business Administrator testified that, after her discovery of this underassessment, she questioned whether other properties within the District might be underassessed.  In doing so, she remembered that the local Walmart had been tax exempt at the time of its last assessment and that the tax exemption had since expired, making the property a potential source of increased tax revenue.  (*Id.* at 83a-84a.)  As before, Business Administrator and the District's superintendent and

4

solicitor performed the same type of review and concluded that the potential increase in revenue would outweigh the costs of proceeding with an appeal. (*Id.* at 84a.)

Business Administrator testified that, in 2016, she became aware of the sale of the Property to Broadwing via her review of the realty transfer tax materials received from the County. (*Id.* at 93a.) Using the same method as before, and without inquiring into the Property's zoning, ownership, or type, Business Administrator calculated the estimated sale price of the Property as being more than $6.7 million using the amount of the realty transfer tax, $33,596.56. (*Id.* at 93a-95a.) After comparing the sale price to the Property's assessed value, she believed the Property was underassessed and presented her calculations to the District's superintendent and solicitor. (*Id.* at 94a.) After they concluded that the increase in tax revenue outweighed the cost of an appeal, the matter was presented to the School Board, which approved the appeal. (*Id.*)

Business Administrator explained that other properties came to her attention using this process, one that sold for over $600,000, and a second that generated a realty transfer tax of $11,854.42, which she presented to the District's superintendent and solicitor. (*Id.* at 86a-91a, 401a, 405a.) After subsequent review, she testified, no appeals were filed because, in the first instance, only a small portion of the property was located within the District, and in the second, the property had been sold to the Commonwealth of Pennsylvania and would, therefore, be tax exempt. (*Id.* at 88a-91a.) Business Administrator stated she did not pay attention to the ownership or zoning information of any property, focusing solely on the sale price to initiate her inquiry into whether a potential assessment appeal should be filed. (*Id.* at 86a-87a.)

On cross-examination, Business Administrator indicated she did not use a specific monetary threshold, but looked at the amount of realty transfer tax initially. (*Id.* at 107a-08a.) She explained the decision to file a tax assessment appeal was "strictly based on possibility of revenue versus the expense of appealing it" and was "purely a financial decision." (*Id.* at 102a-03a, 127a.) Business Manager agreed the District had no written policy establishing when it would pursue an assessment appeal, but stated it was the District's practice to consider the matters as she, the superintendent, and the solicitor had done over the years. (*Id.* at 112a-13a, 115a, 139a-40a.) She testified regarding the "amalgamation of factors"[3] the District uses to determine whether to appeal a tax

---

[3] In its answer to interrogatories from Broadwing requesting any written materials regarding the District's practice or policy in deciding what assessments to appeal, the District stated:

[T]he District neither has nor had a formal policy or practice in place during the time frame referenced. Rather, pursuant to [Section 8855 of the Consolidated County Assessment Law,] 53 Pa. C.S.[] § 8855[,] and corresponding case law, the District chose to challenge the assessment value(s) of the [Property] . . . based upon a perception that [it was] under[]assessed. Considered in that decision were an amalgamation of factors, including:

a.    the initial assessment value for the tax year at issue;
b.    varied evidence of market value suggesting that the properties were under[]assessed;
c.    the potential financial costs of challenging the assessment value for the tax year at issue; and
d.    the potential tax revenue resulting from said appeal should the assessment value be raised to coincide with market value.

At no time did or does the District consider the zoning or classification of the property . . . , the ownership of the property . . . , or the locality of said ownership . . . .

(R.R. at 243a.)

assessment, reiterating her process for deciding what to present to the District's superintendent and solicitor. (*Id.* at 116a-22a.) The following exchange also took place:

Q      Would it be fair to say . . . that you've never recommend[ed] to the [D]istrict that the [D]istrict file one of these appeals for a residential property?

A      I haven't seen a realty transfer tax that would need that discussion.

Q      So is it fair to say that you never recommend that they pursue one of these appeals for a residential property?

A      Not yet, no.

Q      Okay.  Is it fair to say that under the amalgamation of factors that you're looking at, it's highly unlikely that you're going to recommend that the [D]istrict pursue a residential appeal from one of these matters?

A      It could happen if a residential property transferred at a high enough sale to provide that type of realty transfer tax.

Q      Based on your knowledge of this school district, do you think that's going to happen?

A      There are a few properties it could happen [sic], yes.

Q      Okay.  What are those properties?

A      I don't know.  I know there's just a few residential properties that could sell for a large sum of money.

Q      Well, you said there are a few.  Presumably, you had some in mind.  What are they?
        . . .
A      General properties that you hear of what people have built.  I mean, you know some of the larger names in the community that would have properties of that value.

7

(*Id.* at 109a-11a.)

In addition to cross-examining Business Administrator, Broadwing introduced minutes from School Board meetings, which revealed that, at an April 2015 meeting, the School Board granted the District's "administration" with "ongoing discretion to determine which appeals to pursue, the prosecution of the appeals, and the expenditures . . . needed in the appeals." (*Id.* at 236a.) When questioned about this direct authorization, Business Administrator testified that, notwithstanding this authorization, specific approval from the School Board was always obtained prior to moving forward with any tax assessment appeal.[4] (*Id.* at 136a-37a.)

## C. *Common Pleas' Opinions*

Reviewing the evidence before it and the Supreme Court's decision in *Valley Forge*, common pleas held the District's practice for deciding what properties to appeal, as credibly described by Business Administrator, did not violate the Uniformity Clause. Common pleas explained *Valley Forge* clarified that "a taxing authority is not permitted to implement a program of only appealing the assessments of one sub-classification of properties, where that sub-classification is drawn according to property type," whether commercial, apartment complex, single-family residential, industrial, or otherwise. (Common Pleas' Op. at 4 (quoting *Valley Forge*, 163 A.3d at 978).) Citing *Valley Forge*'s statement that nothing therein was to "'be construed as suggesting the use of a monetary

---

[4] Broadwing also presented the testimony of Timberland's director of real estate to describe: the relationship between Timberland and Broadwing; how Broadwing owns the Property as an investment for its owners, which are pension plans; the timbering that is taking place on the Property; and the lease of the Property for recreational and hunting purposes. (R.R. at 153a-55a.)

8

threshold . . . or some other selection criteria would violate uniformity if it were [sic] implemented without regard to the type of property in question or the residency of the owner,'" common pleas concluded the District's practice did "not run afoul of th[e]se dictates." (*Id.* at 5 (quoting *Valley Forge*, 163 A.3d at 979).) Applying these principles, common pleas rejected Broadwing's more expansive reading of *Valley Forge* within the context of the District's practice. (*Id.* at 4.)

Common pleas held that Business Administrator "initiates all tax assessment appeals by highlighting atypically lucrative property sales," without consideration of the type or ownership of property being sold, and presents those financial findings to the School District's superintendent and solicitor. (*Id.*) According to common pleas, Business Administrator looked only for a sales price that could indicate an underassessed property and a potential increase in tax revenue for the District. Common pleas recognized that, due to the rural and less affluent nature of the District, this process had resulted in appeals related only to commercial or commercially-used properties. (*Id.*) Common pleas held, however, that this month-by-month, "numbers only" practice of determining whether a "'qualifying' property sale" occurs was "neither designed nor intended to treat one sub-classification different from any other" and did "not favor or discriminate against any particular group of properties." (*Id.* at 5-6.) Common pleas found that the credibility of Business Administrator's testimony that the practice "was blind to all but the potential tax revenue suggested by a high sales price," was bolstered by the non-appeal of two properties, whose real estate transfer tax triggered her review, but which, upon further review, would not provide a sufficient (or any) increase in tax revenue to justify the filing of a tax appeal. (*Id.* at 6.) Thus, common pleas held, Broadwing had not presented a sustainable challenge based on *Valley Forge*.

9

Without a successful challenge based on *Valley Forge*, and with Broadwing not challenging the "credible and realistic" appraisal of the District's Appraiser, common pleas granted the District's appeal and adopted Appraiser's valuation of the Property. (*Id.*; Common Pleas Order.)

Broadwing appealed, and common pleas directed it to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b), which it did. Therein, Broadwing asserted common pleas erred in holding that the District's practice does not run afoul of *Valley Forge* and that the practice used results in disparate impact on commercial properties. Common pleas issued its opinion in accordance with Pennsylvania Rule of Appellate Procedure 1925(a), relying on its prior opinion to respond to Broadwing's first allegation of error. As to the disparate impact claim, common pleas observed that this concept "has not been given broad application outside the civil rights context" and that *Valley Forge* gave "no indication that it meant to expand its scope to encompass tax assessment appeals." (Common Pleas 1925(a) Op. at 1.) Common pleas explained its "duty [was] to apply *Valley Forge* to the operative facts, not to speculate that the Justices would have extended the reach of 'disparate impact' had the issue before [that court] been formulated differently." (*Id.*) Broadwing's appeal is now ready for disposition.[5]

---

[5] This Court's review of common pleas' decision in a property tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law, or made findings of fact not supported by substantial evidence. *Maula v. Northampton Cty. Div. of Assessment*, 149 A.3d 442, 444 n.2 (Pa. Cmwlth. 2016).

10

## II. Arguments on Appeal

### A. *Broadwing's Arguments*

Broadwing argues that in order to establish a violation of the Uniformity Clause, it must show that the District's enactment "results in some form of classification" and that the District's "classification is unreasonable and not rationally related to any legitimate state purpose." (Broadwing's Brief (Br.) at 14 (quoting *Clifton v. Allegheny County*, 969 A.2d 1197, 1211 (Pa. 2009)).) According to Broadwing, the District's practice creates two unlawful classifications. First, the District's use of recent sales prices creates a classification for properties that have recently sold and removes those properties from "uniform treatment." (*Id.* at 15.) Second, the District creates a classification between commercial and residential properties because, due to the lack of formal tax assessment appeal policy, the determination of what appeal to bring is left to Business Administrator, who has brought only appeals of commercial or commercially-used properties, and who, according to Broadwing, "concede[d] that she will likely never instruct the District to proceed against a residential property." (*Id.* at 16.) As for the reasonableness of the District's policy, Broadwing argues the practice used by Business Administrator, and by extension the District, to determine which property to appeal is arbitrary. That practice, it asserts, does not use any set criteria or an established monetary threshold to determine what to appeal, it merely relies on Business Administrator's review of the realty transfer tax materials for values that stand out as unusually high. Broadwing contends this unstructured process is insufficient to support the District's arguments that its practice complies with the Uniformity Clause.

Broadwing also argues that the effect of the District's sales-based practice effectively creates an impermissible sub-classification under *Valley Forge*. It asserts the District, like the school district in *Valley Forge*, "has systematically filed sales-based tax assessment appeals directed only at commercial properties" or those in commercial use. (*Id.* at 25.) According to Broadwing, common pleas erred in relying on the lack of formal policy and the fact that the filing of appeals only to commercial properties occurred by happenstance to hold that the District's practice does not violate uniformity principles and *Valley Forge*. Recognizing that there has been no direction that appeals only be filed for commercial properties, Broadwing maintains the *de facto* effect of the practice results in the District appealing only a sub-classification of properties. If this practice is allowed to continue, Broadwing argues, *Valley Forge* would be rendered meaningless. (*Id.* at 26.) As for the District's attempts to save its practice by connecting it to the monetary value, rather than the type, of property, Broadwing notes that Business Administrator explained she does not use a specific monetary threshold and, even if she had, Broadwing argues it would merely be a disguised attempt at sub-classification.

### *B. District's Arguments*

The District responds by asserting common pleas correctly dismissed Broadwing's uniformity challenge because it maintains a consistent, systematic review and selection of properties for tax assessment appeal that does not rely on the properties' type or ownership. First, the District disputes Broadwing's characterization of Business Administrator's testimony as having conceded that she would not ever recommend the appeal of a residential property. (District's Br. at 12-13.) Business Administrator's testimony, the District argues, was clear that,

12

although she did not examine the type of property sold when she reviewed the realty transfer tax information, if a residential property generated a high realty transfer tax, she would recommend an appeal thereof. Second, the District argues its practice for selecting properties to appeal is consistent with *Valley Forge*, which must be interpreted within that case's factual posture of having been decided on a demurrer, because its evidence established its "blind monetary analysis [was] systematically and consistently applied . . . with the sole purpose of maximizing revenue with the minimal amount of expenditure." (*Id.* at 15.) The District argues that, like the school district in *In re Springfield School District*, 101 A.3d 835 (Pa. Cmwlth. 2014), it pursues only those appeals where, after an analysis performed by Business Administrator, superintendent, and solicitor, and approved by the School Board, "the potential tax revenue increase merits the estimated cost of pursuit." (*Id.* at 15.) According to the District, only a financial analysis is made and there is no inquiry as to a property's type or ownership. Such process, the District argues, is the type approved by *Valley Forge*.

It further asserts its selection of properties to appeal is consistent with its right to appeal property assessments under Section 8855 of the Consolidated County Assessment Law. The right to pursue such appeals, the District argues, can be asserted following the sale of a property within its jurisdiction, although no triggering event is required. *Vees v. Carbon Cty. Bd. of Assessment Appeals*, 867 A.2d 742, 748-49 (Pa. Cmwlth. 2005); *Millcreek Twp. Sch. Dist. v. Erie Cty. Bd. of Assessments*, 737 A.2d 335, 338 (Pa. Cmwlth. 1999). The District also argues that Broadwing's "as-applied" challenge to the District's practice, i.e., that the practice

13

results in appeals only of commercial or commercially-used properties, is waived for failing to raise that issue before common pleas.[6]

### C. Broadwing's Reply Brief

Broadwing responds, reiterating its position that the District has no policy in place to determine what properties' assessments to appeal but makes such determinations on an ad hoc basis. It maintains the District's reliance on *Valley Forge*'s approval of a neutral selection criteria, such as one based on a monetary threshold, is misplaced because the District's practice contains neither a set monetary threshold nor some other selection criteria that is implemented without regard of a property's type or ownership. As there is no established policy, Broadwing argues, the District's ad hoc practice is not saved by these provisions. As for the District's waiver argument, Broadwing asserts it has raised the issue of the District's practice violating the Uniformity Clause since the beginning of the litigation so it is not waived.[7]

---

[6] The District also asserts Broadwing did not meet its burden of proof of presenting evidence of the market or assessed value of any other property in the taxing district, as required by *Fosko v. Board of Assessment Appeals*, 646 A.2d 1275, 1279 (Pa. Cmwlth. 1994). Common pleas rejected this argument, noting that *Fosko* involved a taxpayer's challenge to uniformity within a sub-classification, not between sub-classifications, which is the issue here and addressed in *Valley Forge*. (Common Pleas' Op. at 6 n.2.) We agree with common pleas that *Fosko* is inapplicable.

[7] By Order dated September 5, 2019, this Court granted the District's request to file a surreply brief and permitted the parties to file supplemental briefs addressing the applicability, or not, of this Court's recent opinions in *School District of Philadelphia v. Board of Revision of Taxes*, __ A.3d __ (Pa. Cmwlth., No. 1493 C.D. 2017, filed August 22, 2019), and *Martel v. Allegheny County*, __ A.3d __ (Pa. Cmwlth., No. 568 C.D. 2018, filed August 14, 2019). The District argues, in its supplemental brief, that, in *School District of Philadelphia* and *Martel*, this Court disavowed the type of broad reading of *Valley Forge* asserted by Broadwing here. In *School District of Philadelphia*, it maintains, this Court referred to *Valley Forge* as having "explained [that] the 'use of a monetary threshold' may be constitutional '**if it were [sic] implemented** without regard to the type of property or residency status of its owner.'" **(Footnote continued on next page…)**

14

## III.    Discussion

The Uniformity Clause provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax,

———————————————————————

**(continued…)**

(District's Suppl. Br. at 1 (quoting *Sch. Dist. of Phila.*, __ A.3d at __, slip op. at 13) (emphasis added by the District).)   The District then points to the Court's statement in *Martel* that the Supreme Court in *Valley Forge* "**expressly limited its holding to the conclusion that the assessment appeal policy at issue violated the uniformity clause where it classified properties by type and/or residency status of their owners**." (*Id.* (quoting *Martel*, __ A.3d at __, slip op. at 17 n.17) (emphasis added by the District).)   In these, and other passages, the District maintains, this Court affirmed a taxing authority's right to appeal where its decision to appeal is based on the use of a financial threshold, or other criteria, which is implemented without consideration of the property's type or ownership.  This is the type of practice used by the District here.

Broadwing argues, in its supplemental brief, that *Valley Forge* does not form the "crux" of its argument; rather, its argument rests on the lack of any policy governing the District's sale-based tax appeals process beyond allowing Business Administrator to "think up properties that might be worth pursuing . . . ." (Broadwing's Suppl. Br. at 1.)  *Valley Forge*, Broadwing asserts, merely helps explain why this policy, or lack thereof, violates the Uniformity Clause.  Moreover, neither *School District of Philadelphia* nor *Martel* actually examined the implications of *Valley Forge* but were resolved on procedural grounds, and, therefore, neither impact this appeal, according to Broadwing.

A review of those cases reveals, however, that while the underlying trial court opinions addressed uniformity and the applicability of *Valley Forge*, this Court's opinions did not address the merits of those issues.  In *Martel*, this Court did not consider the uniformity challenge addressed by the Court of Common Pleas of Allegheny County instead concluding that the preliminary objections in that case were properly sustained because the taxpayers had an adequate statutory remedy that had not been exhausted.  __ A.3d at __, slip op. at 13-15, 17 n.17. In *School District of Philadelphia*, uniformity and *Valley Forge* were at issue, and the Court did discuss *Valley Forge*.  However, because that challenge involved disputed issues of fact and there was no evidentiary record created, we vacated and remanded for an evidentiary hearing and for the Court of Common Pleas of Philadelphia County to make findings of fact regarding the school district's assessment appeal selection process upon which it could then decide the taxpayers' motions to quash the school district's appeals. *Sch. Dist. of Phila.*, __ A.3d at __, slip op. at 14-15.  This Court did not resolve any legal issue regarding the application of *Valley Forge* other than concluding the need for evidence of a taxing authority's assessment appeals policy where the parameters of that policy are disputed. *Id.*  Therefore, this Court's opinions are of limited, if any, value in resolving the issue before the Court.

and shall be levied and collected under general laws." PA. CONST. art. VIII, § 1. This provision ensures that "a taxpayer should pay no more or no less than [the taxpayer's] proportionate share of the cost of government." *In re Sullivan*, 37 A.3d 1250, 1254-55 (Pa. Cmwlth. 2012) (quoting *Deitch Co. v. Bd. of Prop. Assessment Appeals & Review of Allegheny Cty.*, 209 A.2d 397, 401 (Pa. 1965)). All real property within a taxing district "is a single class." *Valley Forge*, 163 A.3d at 975. "[T]he Uniformity Clause does not permit the government, including taxing authorities, to treat different property sub-classifications in a disparate manner." *Id.*

Section 8855 of the Consolidated County Assessment Law, states, in relevant part, that "[a] taxing district shall have the right to appeal any assessment within its jurisdiction in the same manner, subject to the same procedure and with like effect as if the appeal were [sic] taken by a taxable person with respect to the assessment . . . ." 53 Pa. C.S. § 8855. When a taxing authority exercises this discretionary power, however, it must do so within "constitutional boundaries." *Valley Forge*, 163 A.3d at 980. Those constitutional boundaries are violated if a taxing authority has a policy to appeal only "the assessments of one sub-classification of properties, where that sub-classification is drawn according to property type." *Id.* at 978.

In *Valley Forge*, the taxpayers, owners of commercial properties, challenged a school district's policy to appeal the tax assessments of those commercial properties while not appealing underassessed, single-family homes within the school district. The taxpayers alleged that the school district deliberately targeted commercial properties to appeal and avoided appealing the assessments of single-family residential properties for political purposes. *Valley Forge*, 163 A.3d at 968-

16

69. Alleging that such policy violated the Uniformity Clause, the taxpayers sought to enjoin its use. After the local court of common pleas dismissed the taxpayers' claims on demurrers, which this Court affirmed, our Supreme Court reversed. In doing so, it held

> a taxing authority is not permitted to implement a program of only appealing the assessments of one sub-classification of properties, where that sub-classification is drawn according to property type – that is, its use as commercial, apartment complex, single-family residential, industrial, or the like.

*Valley Forge*, 163 A.3d at 978. Further, the Court concluded, the "systematic disparate enforcement of the tax laws based on property sub-classification, even absent wrongful conduct, is constitutionally prohibited." *Id.* The Supreme Court cautioned, however, that its holding should not be construed as not permitting a neutral selection criterion, such as a monetary threshold, so long as the criterion was "implemented without regard to the type of property in question or the residency status of its owner." *Id.* at 979. Accepting the allegations set forth in the *Valley Forge* taxpayers' complaint as true, because of the procedural posture of the case, the Supreme Court concluded the taxpayers had stated a valid claim under the Uniformity Clause and remanded for further proceedings.

Broadwing argues the District's practice violates the Uniformity Clause because the District has no formal or written policy establishing specific criteria or a specific monetary threshold, which results in the District's practice being arbitrary and impermissibly creating a sub-classification per Business Administrator's concessions regarding residential properties. Broadwing maintains this arbitrary and unconstitutional practice is not saved by *Valley*

17

*Forge*'s language approving the use of neutral selection criteria.[8]  After reviewing *Valley Forge* and the evidence credited by common pleas, we disagree that the District's practice, while not formally memorialized, violates the Uniformity Clause.

We begin with Broadwing's arguments that due to the lack of a formalized or written policy and/or specific criteria or a set monetary threshold, the District's practice is arbitrary.  We do not read *Valley Forge* as requiring a formal or written policy or criteria.  All *Valley Forge* requires is that the "other selection criteria" used by a taxing authority, whether a monetary threshold or other methodology, be "implemented without regard to the type of property in question or the residency status of its owner."  163 A.3d at 979.  Thus, the lack of such formal or written policy does not warrant reversal.

As for Broadwing's contentions that the District's practice is without any criteria and is arbitrary, the credited evidence of that practice establishes otherwise.  This is not a situation, as in *Valley Forge*, where the taxpayer's allegations regarding a taxing authority's motive and policy **had to be accepted** due to the stage of the litigation.  Rather, Business Administrator credibly testified regarding the financial analysis she performs in order to decide what properties, if any, in a given month she will present to the District's superintendent and solicitor, as possible underassessed properties.  Although no triggering event is required for a taxing authority to appeal an assessment, *Vees*, 867 A.2d at 748-49, Business

---

[8] To the extent the District argues Broadwing has waived any of the uniformity arguments it presents here, our review of the record reveals that Broadwing has consistently challenged, on uniformity grounds, the District's practice of choosing what properties to appeal, including that this practice has resulted in appeals only of commercial or commercially-used properties.  Accordingly, Broadwing has not waived any of its arguments.

Administrator's financial analysis commences upon the occurrence of an event, such as the sale of a property at a high price as reflected in the realty transfer tax documentation, or the recognition that a property's tax-exempt status has expired, either of which could suggest that a property may be underassessed. This initial financial analysis begets a second financial analysis by Business Administrator, who calculates the potential increase in revenue that could result from the reassessment of the identified property. This second financial analysis yields a third financial analysis, performed by Business Administrator, the superintendent, and the solicitor, to determine whether the potential increase in tax revenue outweighs the potential cost of filing an assessment appeal for the property. Business Administrator testified these financial analyses, and the decision of which assessments to appeal, are carried out, or implemented,[9] without considering a property's type or ownership. Importantly, common pleas credited this testimony. Questions of credibility are for the fact finder, here, common pleas, and its credibility determinations are binding on this Court. *Parview Court Assocs. v. Delaware Cty. Bd. of Assessment Appeals*, 959 A.2d 515, 520-21 (Pa. Cmwlth. 2008).

Further, while the District does not rely on a specific monetary threshold, such as that used by the school districts in *Springfield*, 101 A.3d at 840 ($500,000 sales price) and *East Stroudsburg Area School District v. Meadow Lake Plaza, LLC* (Pa. Cmwlth., No. 371 C.D. 2018, filed Oct. 17, 2019), slip op. at 3-4 ($10,000 potential increase in tax revenue which represented the average cost of an

---

[9] "Implement" means "to carry out." Webster's Third New International Dictionary 1134-35 (2002).

assessment appeal),[10] Business Administrator is familiar with the average realty transfer taxes associated with properties within the District, having reviewed those amounts monthly since 2007. Using that expertise, Business Administrator knows what amount of realty transfer tax suggests that a property, regardless of type or ownership, may have sold at a price that could indicate the existing assessment is too low. Similar to the school districts in *Springfield* and *East Stroudsburg*, the District then, through Business Administrator, solicitor, and superintendent, determines whether the potential increase in tax revenue of a successful assessment challenge would outweigh the likely cost of appealing the assessment of that property. The difference in this practice and that in *Springfield* and *East Stroudsburg*, is that, instead of basing its decision on average costs of appeals as in those cases, the District performs a property-by-property analysis to determine if it makes financial sense to appeal an assessment. And, importantly, this analysis is implemented without consideration of a property's type or owner. The neutral and financial nature of this process is borne out by the fact that not all properties with higher realty transfer taxes or sales prices were appealed due to the fact that the cost of the appeal would have outweighed the minimal, if any, increase in tax revenue the District would have realized. Accordingly, the District's practice is not an arbitrary one, but is rationally based on a financial analysis implemented without regard to a property's type or ownership and is of the type approved by *Valley Forge*.

---

[10] While not binding, unreported opinions of this Court may be cited for their persuasive authority pursuant to Section 414(a) of our Internal Operating Procedures, 210 Pa. Code § 69.414(a).

20

We next consider Broadwing's contention that Business Administrator conceded that no residential properties would ever be appealed, establishing that the District's practice creates an impermissible subclass of taxpayers. A review of Business Administrator's testimony reveals she made no such concession. She explained no residential properties had been appealed "yet" because there had been no realty transfer tax associated with a sale of such a property that warranted review. (R.R. at 109a-10a.) Business Administrator disagreed with the notion that there were no residential properties that would be sold for a sufficiently high amount to result in a review, noting there could be a few large properties that would do so if sold. (*Id.* at 110a-11a.) She also credibly testified that, when reviewing which properties the District should consider appealing, no consideration was given to the type of property, and only the financial benefit versus the financial cost of any potential appeal was considered. (*Id.* at 81a-82a, 86a-87a, 94a, 107a-08a.) Such testimony does not support a conclusion that the District will never appeal the assessment of a residential property thereby creating an unconstitutional sub-classification of properties within its jurisdiction.

A second basis for Broadwing's assertion that an unconstitutional sub-classification is created is premised on the fact that the District's practice has resulted in appeals only of commercial or commercially-used properties. However, that the District's practice **thus far** has resulted in appeals of commercial or commercially-used properties is not determinative where that practice is implemented or carried out without regard to the type or ownership of a property. The District relies on the occurrence of a triggering event to bring a potentially underassessed property to its attention. So far, no sale of residential properties has resulted in a high enough realty transfer tax to warrant review, and

21

Broadwing has not presented evidence to the contrary. That is not to say that none will in the future, and, based on Business Administrator's credited testimony, if one does, the same process will be used to determine whether that property's assessment should be appealed. Such result is consistent with *East Stroudsburg*, wherein we rejected the taxpayers argument that, even if the threshold was facially neutral, it resulted in the appeal only of commercial properties based on the credited evidence presented by the school district that it would have appealed any residential property's assessment had any met the threshold. Slip op. at 11-12.

IV.        **Conclusion**

For the foregoing reasons, the District's practice of determining what property assessments to appeal, which is based on the numbers and implemented without regard to a property's type or ownership, does not violate the Uniformity Clause and is not inconsistent with our Supreme Court's decision in *Valley Forge*. Accordingly, common pleas' Order granting the District's tax assessment appeal and directing the reassessment of the Property in accordance with the District's appraisal is affirmed.

_____

**RENÉE COHN JUBELIRER,** Judge

22

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Punxsutawney Area School District     :
                                      :
                                      :
                                      :
                    v.                :     No. 1209 C.D. 2018
                                      :
Broadwing Timber, LLC,                :
                    Appellant         :

# O R D E R

NOW, October 29, 2019, the Order of the Court of Common Pleas of Jefferson County is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge