# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Phoenixville Area School District    :
    :
           v.    :    No. 786 C.D. 2024
    :    Submitted: July 7, 2025
Jian C. Shi and Fei C. Zheng and    :
Chester County Board of Assessment    :
Appeals    :
    :
Appeal of: Jian C. Shi and    :
             Fei C. Zheng    :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE MATTHEW S. WOLF, Judge
             HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER    FILED: September 26, 2025

Jian C. Shi and Fei C. Zheng (Taxpayers) appeal the April 24, 2024 Order of the Court of Common Pleas of Chester County (trial court). The Order increased the tax assessment of Taxpayers' real property located at 248 Bridge Street in Phoenixville Borough (Property),[1] for tax years 2023 and 2024, following a tax assessment appeal filed by the Phoenixville Area School District (School District or District). Specifically, the Order increased the tax assessment of the Property from $133,340 to $347,600 and $316,800 for tax years 2023 and 2024, respectively. Taxpayers argue the trial court erred and abused its discretion in the Order because the method used by the School District to select the Property for a tax assessment

---

[1] Taxpayers own a restaurant located in the business district of Phoenixville Borough.

appeal violated the Uniformity Clause of the Pennsylvania Constitution[2] (Uniformity Clause) and constituted an unlawful spot reassessment. After review, the Court affirms the Order because the School District's tax assessment appeal of the Property neither violated the Uniformity Clause nor constituted an unlawful spot reassessment.

## I. BACKGROUND

### A. School District's Tax Assessment Appeal Policy

As of the initiation of the instant matter, Chester County has not performed a countywide real property tax assessment since 1998. "[R]ecogniz[ing] that ensuring fairness to all taxpayers is an important objective, as is recovering tax revenue that would be lost if real estate is assessed substantially lower than is warranted based upon the property's fair market value," the School District in 2019 established a policy to determine when it may initiate tax assessment appeals of under-assessed properties within the District (Policy). (Reproduced Record (R.R.) at 119a.) Pursuant to the Policy, the School District may initiate a tax assessment appeal of any property within the District where the sales price or actual fair market value of the property exceeds by $250,000 or more its implied fair market value.[3] The Policy

---

[2] PA. CONST. art. VIII, § 1.

[3] The Policy defines "implied fair market value" as "the tax assessment divided by the common level ratio [(CLR)] then in effect for the School District under Pennsylvania assessment law." (R.R. at 120a.) Section 8802 of the Consolidated County Assessment Law defines CLR as "[t]he ratio of assessed value to current market value used generally in the county and published by the State Tax Equalization Board [(STEB)] on or before July 1 of the year prior to the tax year on appeal before the board . . . ." 53 Pa.C.S. § 8802. As explained by this Court:

> The CLR is calculated for each county on an annual basis by the STEB using data from all arms-length sales transactions during the relevant period, supplemented by independent appraisal data and other relevant information. . . . For example, "a

**(Footnote continued on next page…)**

2

also requires the School District to apply the above financial criteria "without regard to the type of property in question (commercial, residential or otherwise), or the residency status of its owner." (*Id.* at 120a.) According to its stated purpose, the Policy's "objective financial criteria" and disregard for property type or residency status are intended to comply with our Supreme Court's directives in *Valley Forge Towers Apartments N, LP v. Upper Merion Area School District*, 163 A.3d 962 (Pa. 2017) (*Valley Forge Towers*). (R.R. at 119a.)

Additionally, the Policy authorizes the School District to engage professional consultants to assist in implementing the Policy. In 2022, the School District engaged Valbridge Property Advisors (Valbridge) to assist in identifying properties within the District that would satisfy the $250,000 threshold for initiating a tax assessment appeal for tax year 2023. Valbridge identified 31 properties, consisting of 34 parcels, within the District that satisfied the Policy's financial criteria. Of the 31 properties, Valbridge classified 20 as commercial or mixed commercial, 7 as apartments, 3 as residential or mixed residential, and 1 as industrial. With an assessed actual fair market value of $880,000 but an implied fair market value of approximately $337,569,[4] Valbridge listed the Property as one of the commercial properties that satisfied the Policy's financial criteria. (R.R. at 17a, 25a-26a.)

---

county's CLR will be 70 if the total assessed value of properties sold in arms-length sales in a year is 70% of the total market value of the properties" in the county.

*GM Berkshire Hills LLC v. Berks Cnty. Bd. of Assessment*, 257 A.3d 822, 825 n.4 (Pa. Cmwlth. 2021), *aff'd by evenly divided court*, 290 A.3d 238 (Pa. 2023). Relevant here, the CLR for the 2023 and 2024 tax years in Chester County is 39.5% and 36%, respectively.

[4] The 2023 tax assessment of the Property ($133,340) divided by the CLR in effect for the School District in tax year 2023 (39.5%) equals an implied fair market value of $337,569.62.

### B. *Proceedings Before the Trial Court*

Subsequently, the School District initiated a tax assessment appeal of the Property, which the Chester County Board of Assessment Appeals (Board) denied on November 3, 2022, in a Notice of No Change in Assessment. Thus, the Property remained assessed at $133,340 for tax year 2023. A few weeks later, the School District appealed the Board's decision to the trial court, contending that the assessment of the Property "is less than indicated by the fair market value of the Property." (*Id.* at 4a.) In their answer and new matter, Taxpayers argued the School District's appeal of the tax assessment of the Property constituted an unlawful spot reassessment and violated the Uniformity Clause and the Equal Protection Clause of the United States Constitution.[5]

The trial court held a de novo hearing on January 30, 2024, at which the parties introduced the following testimony. First, the School District directly examined Reaves Lukens, III, a senior managing director at Valbridge, whom the trial court admitted as an expert real estate appraiser. Mr. Lukens testified that he appraised the Property on August 1, 2022, and January 1, 2024, at the request of the School District. Based on his appraisals, Mr. Lukens opined that the Property had a fair market value of $880,000 on both dates, an increase from the $630,000 Taxpayers purchased the Property for in 2013. Mr. Lukens detailed the methodology used in reaching his appraisals and explained that the "tremendous growth and redevelopment" of Phoenixville Borough since 2013 caused the value of properties located there, such as the Property, to increase quickly. (R.R. at 28a.) On cross-examination by Taxpayers, Mr. Lukens further explained the methodology used to select properties for appraisals, which resulted in Valbridge completing

_____

[5] U.S. CONST. amend. XIV, § 1.

4

approximately 30 appraisals for the School District between 2022 and 2024, including for both commercial and residential properties.

Taxpayers then directly examined Mr. Lukens in his capacity as a representative of the School District familiar with the Policy. As to how Valbridge determined properties suitable for appeal under the Policy, Mr. Lukens testified as follows. To start, Valbridge "download[ed] all the properties in the . . . School District property records." (R.R. at 69a.) Of the properties with recorded sales prices, Valbridge completed "value trending" from the sales price, regardless of property type; that is, Valbridge "trended" the sales price to the current date based on "a conservative inflation rate for the time" to project the property's current value. (*Id.*) Valbridge also "gathered sales of different types of assets," determined "a blended average unit rate," and applied the average to the different property types. (*Id.* at 70a.) For example, Valbridge determined the value of an apartment building based on the average price per unit and a warehouse based on the average price per square foot. Valbridge then "would do a trending utilizing the averages," sort the properties, and develop a list of properties "where there was a high probability that it was undervalued and would . . . result in a successful assessment appeal." (*Id.*) Applying the above methodology to the Property, Mr. Lukens explained that Valbridge trended the 2013 sales price of $630,000 to a fair market value of $880,000 in 2022 and 2024. Based on this trending analysis, Valbridge included the Property in its list of properties that satisfied the $250,000 threshold set in the Policy for the School District to file a tax assessment appeal.

When questioned by Taxpayers on why so many of the 31 properties identified for appeal were located in the business district of Phoenixville Borough, including the Property, Mr. Lukens opined that "they just dropped out that way. Those were

5

ones that indicated that they had a high probability of a successful appeal." (*Id.* at 81a.) On cross-examination by the School District, Mr. Lukens confirmed that the School District did not instruct Valbridge to target or avoid particular property types and that Valbridge did not specifically target Bridge Street, where the Property is located. When pressed again on the issue in redirect-examination, Mr. Lukens disagreed with the characterization that the properties located on Bridge Street "were disproportionately subject to the assessment appeals by the [S]chool [D]istrict." (*Id.* at 89a.) Rather, Mr. Lukens opined:

> [T]he business district has really exploded[,] and the values had really outpaced the rest of the area. That's why there's the disparity and probably why the business district is more represented . . . . It outperformed other neighborhoods, and, so, they were disproportionately undervalued than other parts of the . . . School District service area.

(*Id.* at 89a.)

Following the hearing, the trial court raised the tax assessment of the Property via the Order. In reaching this decision, the trial court concluded that Mr. Lukens credibly testified that the Property had an appraised value of $880,000. Moreover, the trial court found that despite acknowledging that the Property is underassessed and contending the School District's appraisal is too high, Taxpayers "offered no evidence regarding the current fair market value of the Property." (Trial Court's Decision at 2.) Accordingly, based on the School District's appraisal of $880,000 and the applicable CLR, the trial court concluded that the Property shall be assessed at $347,600 for tax year 2023 and $316,800 for tax years 2024 and beyond.[6]

---

[6] For tax year 2023, the trial court calculated the tax assessment of $347,600 by multiplying $880,000 by the CLR in effect for the School District in tax year 2023 (39.5%). For tax year 2024 and beyond, the trial court calculated the tax assessment of $316,800 by multiplying $880,000 by the CLR in effect for the School District in tax year 2024 (36%).

6

As to the Policy in general, the trial court found that Mr. Lukens credibly testified as to the methodology used by Valbridge to identify properties that satisfied the Policy. As found by the trial court, this methodology included "a value trend analysis for all properties located within the [] School District that had been sold in or after 1980." (Trial Court's Decision at 2-3.) Additionally, the trial court found that there was no credible evidence that the School District knew of additional properties that satisfied the Policy, selected the properties to appeal based on property type or subclassification, or did not file an appeal for any property that satisfied the Policy. Based on the foregoing, the trial court concluded the Policy did not violate the Uniformity Clause. The trial court also concluded the Policy did not constitute an unlawful spot reassessment because the School District lacks the power of assessment and merely exercised its right to appeal tax assessments.

Taxpayers now appeal the Order to this Court.

## II. DISCUSSION

On appeal,[7] Taxpayers present three principal arguments. First, the Policy violates the Uniformity Clause because it is an "ersatz and piecemeal correction of underassessments" that disproportionally affects properties in the Phoenixville

---

[7] When the trial court, as is the case here, "takes additional evidence in its de novo review of a tax assessment appeal case, this Court's review is limited to whether the [trial] court abused its discretion, committed an error of law, or made findings unsupported by substantial evidence." *Coatesville Area Sch. Dist. v. Chester Cnty. Bd. of Assessment Appeals*, 323 A.3d 61, 74 n.8 (Pa. Cmwlth. 2024) (*Preserve at Milltown*). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Norwegian Township v. Schuylkill Cnty. Bd. of Assessment Appeals*, 74 A.3d 1124, 1128 n.3 (Pa. Cmwlth. 2013). As factfinder, the trial court "maintains exclusive province over matters involving the credibility of witnesses and the weight afforded to the evidence." *Preserve at Milltown*, 323 A.3d at 74 n.8 (citation omitted). The Court's "review of legal issues is plenary." *Kennett Consol. Sch. Dist. v. Chester Cnty. Bd. of Assessment Appeals*, 228 A.3d 29, 33 n.6 (Pa. Cmwlth. 2020), *appeal dismissed as improvidently granted*, (Pa., 63 MAP 2020, filed Sept. 22, 2021).

Borough business district, including the Property. (Taxpayers' Brief (Br.) at 26 (citation omitted).) Second, the Policy violates the Uniformity Clause because it creates a subclassification of properties subject to tax assessment appeals. Finally, the Policy violates the Uniformity Clause because it, in effect, constitutes a prohibited "spot reassessment" of the Property. We address each argument in turn.

### A. Uniformity Clause

To start, school districts in the Commonwealth "rely heavily on property tax revenue to carry out their missions." *Coatesville Area Sch. Dist. v. Chester Cnty. Bd. of Assessment Appeals*, 323 A.3d 61, 74 (Pa. Cmwlth. 2024) (*Preserve at Milltown*). Acknowledging this reality, Section 8855 of the Consolidated County Assessment Law (Assessment Law) provides:

> A taxing district[8] shall have the right to appeal any assessment within its jurisdiction in the same manner, subject to the same procedure and with like effect as if the appeal were taken by a taxable person with respect to the assessment, and, in addition, may take an appeal from any decision of the board [of assessment appeals] or court of common pleas as though it had been a party to the proceedings before the board or court even though it was not a party in fact. A taxing district authority may intervene in any appeal by a taxable person under [S]ection 8854 (relating to appeals to court) as a matter of right.

53 Pa.C.S. § 8855. Although the Assessment Law "does not prescribe a precise methodology for a school district to employ in appealing assessments," it is axiomatic that "school districts must exercise the discretion afforded by Section 8855 within 'constitutional boundaries.'" *Preserve at Milltown*, 323 A.3d at 74 (citing *Valley Forge Towers*, 163 A.3d at 980).

---

[8] A school district is considered a "taxing district." Section 8802 of the Assessment Law, 53 Pa.C.S. § 8802 (defining "[t]axing district" as "[a] county, city, borough, incorporated town, township, school district or county institution district").

8

One such constitutional boundary is the Uniformity Clause, which mandates that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." PA. CONST. art. VIII, § 1. The "general principle" of the Uniformity Clause is that "taxpayers should pay no more or less than their proportionate share of government." *Valley Forge Towers*, 163 A.3d at 972 (citation omitted). As long explained by our Supreme Court,

> [w]hile every tax is a burden, it is more cheerfully borne when the citizen feels that he is only required to bear his proportionate share of that burden measured by the value of his property to that of his neighbor. This is not an idle thought in the mind of the taxpayer, nor is it a mere speculative theory advocated by learned writers on the subject; but it is a fundamental principle written into the Constitutions and statutes of almost every state in this country.

*Downingtown Area Sch. Dist. v. Chester Cnty. Bd. of Assessments*, 913 A.2d 194, 199 (Pa. 2006) (*Lionville*) (quoting *Del., L. & W. Ry. Co.'s Tax Assessment*, 73 A. 429, 430 (Pa. 1909)). Nonetheless, "[t]axation . . . is not a matter of exact science; hence absolute equality and perfect uniformity are not required to satisfy the constitutional uniformity requirement." *Clifton v. Allegheny County*, 969 A.2d 1197, 1210 (Pa. 2009).

In the real property context, the Uniformity Clause establishes that "all realty is a single class entitled to uniform treatment." *Valley Forge Towers*, 163 A.3d at 973. Consequently, "the Uniformity Clause does not permit the government, including taxing authorities, to treat different property sub-classifications in a disparate manner." *Id.* at 975. "[T]his prohibition applies to any intentional or systematic enforcement of the tax laws, and is not limited solely to wrongful conduct." *Id.*; *see also Lionville*, 913 A.2d at 201 ("[W]hile the Commonwealth

9

may certainly seek to achieve overall uniformity by attempting to standardize treatment among differently situated property owners, its efforts in this regard do not shield it from the prevailing requirement that similarly situated taxpayers should not be deliberately treated differently by taxing authorities."). Accordingly, it is settled that "a taxing authority is not permitted to implement a program of only appealing the assessments of one sub-classification of properties." *Valley Forge Towers*, 163 A.3d at 978. That is, a taxing authority may not appeal the assessments of properties based only on property type (i.e., commercial, residential, industrial, etc.), residency status of the owner, neighborhood, or the like. *See id.* at 980 (holding an appeal policy that classified properties by type and residency status of the owner violated the Uniformity Clause); *Clifton*, 969 A.2d at 1227-29 (rejecting a policy that, in effect, caused pervasive disparities in assessments by neighborhood in violation of the Uniformity Clause).

In sum, school districts have an interest in appealing real property tax assessments to increase the revenue needed to perform their mission. *Preserve at Milltown*, 323 A.3d at 74. Section 8855 of the Assessment Law provides school districts a statutory right to appeal tax assessments, and "[t]he particular appeal policy employed by a [school] district lies within its discretion." *Valley Forge Towers*, 163 A.3d at 978, 980. However, "[w]here there is a conflict between maximizing revenue and ensuring that the taxing system is implemented in a non-discriminatory way, the Uniformity Clause requires that the latter goal be given primacy." *Id.* at 980. Although "the two objectives do not necessarily conflict," it is the court's task to enforce the constitutional boundaries of any appeal policy employed by a school district. *Id.*

With these principles in mind, we turn to Taxpayers' arguments.

10

*B. Monetary Thresholds*

Taxpayers first argue that the financial criteria of the Policy, i.e., the $250,000 threshold to initiate tax assessment appeals, violates the Uniformity Clause "in both theory and implementation." (Taxpayers' Br. at 26.) "While there was no testimony that the District did not appeal properties which met its threshold," Taxpayers posit that the School District appealed neither properties below the $250,000 threshold nor over-assessed properties, the purpose of which "was to increase revenue to the District, at the expense of uniformity." (*Id.*) Therefore, Taxpayers argue the Policy creates precisely the "ersatz and piecemeal correction of underassessments" our Court deemed unconstitutional in *Downingtown Area School District v. Chester County Board of Assessment Appeals*, 303 A.3d 1104 (Pa. Cmwlth. 2023) (*Marchwood Apartments*), *petition for allowance of appeal granted*, (Pa., 678-79 MAL 2023, filed June 12, 2024). (Taxpayers' Br. at 26.) Moreover, Taxpayers argue the Policy disproportionately targeted properties located in the Phoenixville Borough business district, because "properties in that neighborhood have increased in value at a rate greater than other neighborhoods in the School District." (*Id.* at 27.) "Whether the disproportionate impact of the District's [P]olicy upon the business district properties was by design, or merely a byproduct of the process it employed, is not relevant." (*Id.*) What is relevant, Taxpayers maintain, is the Policy resulted in the disproportionate targeting of a group of properties, which "created a systematic and disparate treatment of these taxpayers." (*Id.*)

Under the current jurisprudence in the Commonwealth, monetary thresholds used by taxing districts to select properties for tax assessment appeals do not violate the Uniformity Clause if the selection method is neutral on its face and as applied regarding property subclassifications. *See Preserve at Milltown*, 323 A.3d at 78;

11

*Marchwood Apartments*, 303 A.3d at 1114-15; *GM Berkshire Hills LLC v. Berks Cnty. Bd. of Assessment*, 257 A.3d 822, 834 (Pa. Cmwlth. 2021) (*GM Berkshire Hills I*), *aff'd by equally divided court*, 290 A.3d 238 (Pa. 2023) (*GM Berkshire Hills II*); *Kennett Consol. Sch. Dist. v. Chester Cnty. Bd. of Assessment Appeals*, 228 A.3d 29, 41 (Pa. Cmwlth. 2020) (*Kennett*), *appeal dismissed as improvidently granted*, (Pa., 63 MAP 2020, filed Sept. 22, 2021); *see also GM Berkshire Hills II*, 290 A.3d at 246 (opinion in support of affirmance (OISA)) (explaining that "nothing in our decisional law [] prohibits this type of methodology" so long as the monetary threshold "does not create a prohibited sub-class of properties");[9] *Valley Forge Towers*, 163 A.3d at 979 (clarifying, in dicta, that the Court's opinion does not suggest monetary thresholds violate the Uniformity Clause if implemented without regard to property subclassification).  Whether a given monetary threshold policy passes constitutional muster depends largely on the unique facts surrounding the policy; therefore, we "must examine the totality of the circumstances in making such a determination."  *Preserve at Milltown*, 323 A.3d at 84 (citing *Marchwood Apartments*, 303 A.3d at 1113, and *Sch. Dist. of Phila. v. Bd. of Revision of Taxes*, 303 A.3d 1150, 1163-65 (Pa. Cmwlth. 2023)).

Recent decisions by this Court are instructive on this issue.  In *Kennett*, this Court concluded that a school district's policy of initiating a tax assessment appeal of any property that was underassessed by $1 million or more of its market value, regardless of property type, did not violate the Uniformity Clause.  228 A.3d at 31, 41.  There, the school district retained an outside consultant to recommend properties that satisfied the district's monetary threshold and explicitly required the consultant

---

[9] "[W]hen our Supreme Court divides equally in a case, neither opinion having commanded a majority of the Court, neither opinion becomes precedential." *Preserve at Milltown*, 323 A.3d at 79 (citations omitted; emphasis removed).

12

to "not limit your review to any particular class of properties . . . , but review all classes of properties including commercial, residential, and otherwise." *Id.* at 31 (emphasis removed). The consultant identified 13 properties suitable for appeal, of which the school district appealed 12, including the property at issue. *Id.* Under these factual circumstances, this Court concluded that the monetary threshold did not run afoul of the Uniformity Clause because the school district "deliberately ignored the property type and focused only on its fiscal considerations." *Id.* at 41. This Court further reasoned that the school district "us[ed] a monetary threshold only for the purpose of making prudent fiscal decisions, and not for the purpose of discriminating against sub-classes of properties." *Id.* (emphasis removed).

A year later, this Court in *GM Berkshire Hills I* likewise concluded a school district's use of a monetary threshold to select properties for tax assessment appeals passed constitutional muster. 257 A.3d at 835. In that case, the school district passed a resolution to initiate tax assessment appeals within the district when the difference between the current assessed value and the assessed value based on a recent sale exceeded $150,000. *Id.* at 825. The resolution did not instruct the school district to consider the type or nature of the property when identifying underassessed properties for appeal. *Id.* Upon a tax assessment appeal, this Court concluded that the school district's method for selecting properties to initiate appeals did not violate the Uniformity Clause. *Id.* at 835. This Court reasoned that

> [u]sing recent sales prices as part of the selection of properties for appeals is a quantitative method of reasonably ascertaining a property owner's fair share of the tax burden, because such figures represent the kind of evidence of market value that a school district must show when it appeals an assessment.

13

*Id.* Moreover, "as applied by the [d]istrict, this method employs a purely economic approach that is practical for the [d]istrict yet does not improperly differentiate based on property type." *Id.* We further explained that our Supreme Court condoned this type of approach in *Valley Forge Towers* and this Court subsequently approved of it in *Punxsutawney Area School District v. Broadwing Timber, LLC* (Pa. Cmwlth., No. 1209 C.D. 2018, filed October 29, 2019), and *East Stroudsburg Area School District v. Meadow Lake Plaza, LLC* (Pa. Cmwlth., No. 371 C.D. 2018, filed October 17, 2019). *GM Berkshire Hills I*, 257 A.3d at 835.

In *Marchwood Apartments*, however, this Court concluded that while the school district's use of a monetary threshold of $10,000 in increased tax revenue to select properties for appeal may be constitutional, the district's "random application" of the policy violated the Uniformity Clause. 303 A.3d at 1114. This Court explained that "the [s]chool [d]istrict [] implemented its policy in an arbitrary fashion" for the following reasons:

> First, it chose to appeal the assessments of 16 properties even though it knew that there were many more properties in the [s]chool [d]istrict that satisfied the monetary threshold. Second, Lukens[10] testified that he "did not have a hard and fast rule with respect to the methodology [he] used" to identify properties, and he could not elucidate these flexible "rules" that he used. . . . He could only state that he was "trying to maximize the return to the [s]chool [d]istrict." . . . Third, the Marchwood apartment complex was not on Lukens' list of properties identified for an assessment appeal, and the [s]chool [d]istrict offered no explanation for the later selection of the Marchwood apartment complex for an assessment appeal. Fourth, the [s]chool [d]istrict rejected a commercial property that met the monetary threshold for the sole reason that its counsel was aggressive.

---

[10] Mr. Lukens, who consulted with the School District here, also consulted with the school district in *Marchwood Apartments*.

14

*Id.* at 1113 (citations omitted). Accordingly, under those circumstances, this Court concluded that "[t]he monetary threshold may have been neutral, but the implementation, perhaps too limited in scope, created a systematic and disparate treatment of taxpayers, both the overassessed and the underassessed." *Id.* at 1115.

Here, the School District's use of a monetary threshold in the Policy does not violate the Uniformity Clause in theory or implementation. First, the Policy's monetary threshold is facially neutral as to property subclassifications because it deliberately ignores any subclassifications and only considers objective financial criteria. Indeed, the Policy explicitly requires the School District to apply the $250,000 threshold "**without regard** to the type of property in question (commercial, residential or otherwise), or the residency status of its owner." (R.R. at 120a (emphasis added).) Therefore, similar to the policies in *Kennett* and *GM Berkshire Hills I*, the monetary threshold here is facially neutral and does not violate the Uniformity Clause.

As applied, the Policy's monetary threshold also passes constitutional muster. Taxpayers argue that the Policy constitutes an "ersatz and piecemeal correction of underassessments" deemed unconstitutional by our Court in *Marchwood Apartments*. (Taxpayers' Br. at 26.) *Marchwood Apartments*, however, is distinguishable from the instant case because, as found by the trial court, there are no facts here that indicate the School District implemented the monetary threshold in a random, arbitrary manner. Rather, in direct contrast to *Marchwood Apartments*, the evidence of record establishes the following. First, the School District did not know of any other properties that satisfied the Policy's financial criteria outside of the 31 properties identified by Valbridge. Second, Mr. Lukens, whom the trial court found credible, testified to the precise methodology used to identify properties for

15

appeal, which included "a value trend analysis for all properties located within the [] School District that had been sold in or after 1980." (Trial Court's Decision at 2-3.) Third, the list of properties that met the Policy's threshold compiled by Valbridge included the Property. Finally, the School District filed a tax assessment appeal for every property that satisfied the Policy's financial criteria. Therefore, unlike in *Marchwood Apartments*, the evidence establishes that the School District did not implement the Policy's monetary threshold in an unconstitutional manner.

Moreover, the School District did not violate the Uniformity Clause by appealing only those underassessed properties that met the $250,000 threshold, and not underassessed properties below the threshold or over-assessed properties, as argued by Taxpayers. The School District is "statutorily authorized to appeal tax assessments, and they cannot reasonably appeal every property within their borders." *See GM Berkshire Hills II*, 290 A.3d at 244 (OISA). Consequently, the District "must be selective in deciding which properties to appeal." *See id.* In so doing, the School District has the discretion to appeal only those properties that maximize its revenue increase, so long as the District remains within constitutional boundaries. *See Valley Forge Towers*, 163 A.3d at 980; *Kennett*, 228 A.3d at 40-41. Further, the School District is not required to appeal over-assessed properties. *See GM Berkshire Hill II*, 290 A.3d at 247 (OISA) ("In such cases the taxing district would not be aggrieved by the assessment and thus would have no reason (or possibly standing) to appeal it."). Instead, property owners possess their own statutory appeal rights under the Assessment Law through which they may seek a reduction in their properties' tax assessment if over-assessed. *See* Section 8844 and 8854 of the Assessment Law, 53 Pa.C.S. §§ 8844, 8854. Therefore, the School District did not

16

violate the Uniformity Clause by exercising its discretion to appeal only those underassessed properties that satisfied the Policy's financial criteria.

### C. Subclassification

Next, Taxpayers argue the School District unconstitutionally created a subclassification of properties because the Policy unduly impacts commercial properties located in the Phoenixville Borough business district. Taxpayers assert that the School District "exploited" the "disparity between the assessed values and actual property values" of the business district properties caused by the lack of a recent Chester County-wide reassessment "to increase revenue to avoid politically unpopular tax increases." (Taxpayers' Br. at 28.) The School District's "cherry picking" of "seemingly underassessed properties which have not been [the] subject of a recent sale," Taxpayers contend, excludes from appeal many properties throughout the School District that are also incorrectly assessed. (*Id.* at 29.) According to Taxpayers, the Policy therefore creates an unconstitutional subclassification of properties in violation of the Uniformity Clause, which mandates that "taxpayers should pay no more or less than their proportionate share of government." (*Id.* at 29 (citation omitted).)

It is settled that "all property in a taxing district is a single class, and, as a consequence, the Uniformity Clause does not permit the government, including taxing authorities, to treat different property sub-classifications in a disparate manner." *Valley Forge Towers*, 163 A.3d at 975. In other words, the Uniformity Clause prohibits "the systematic differential treatment of a subclass of property defined, for example, by property type or residence status of the owner (*Valley Forge Towers*), or by neighborhood (*Clifton*)." *GM Berkshire Hills II*, 290 A.3d at 245 (OISA). "[T]his prohibition applies to any intentional or systematic enforcement of

17

the tax laws, and is not limited solely to wrongful conduct." *Valley Forge Towers*, 163 A.3d at 975. Where the taxing district deliberately disregards property subclassifications when determining which property assessments to appeal, the district's conduct is neither intentional nor systematic. *Kennett*, 228 A.3d at 37.

Again, *Kennett* is instructive here. As to subclassification, the taxpayers in *Kennett* argued that the school district's policy of appealing those properties underassessed by at least $1 million violated the Uniformity Clause because the policy resulted in appeals of only commercial properties. 228 A.3d at 34. This Court disagreed, reasoning that the policy was "constitutionally firm" per *Valley Forge Towers*. *Id.* at 37. This Court explained that the record evidence indicated that the school district "intentionally disregarded the type of property and, thus, it cannot be said that [the d]istrict's actions in appealing the assessments of commercial properties were intentional." *Id.* (emphasis removed). Furthermore, the "[d]istrict's actions did not systematically target commercial properties, but, rather, only focused on properties that would be worth the cost and expense of an appeal." *Id.* Accordingly, this Court concluded that no Uniformity Clause violation occurred as to property subclassification and "[t]he mere fact that all appealed properties were commercial does not *per se* create a violation of the Uniformity Clause. . . . especially so in light of [the d]istrict's intentional disregard for the nature of the property." *Id.* at 39.

Here, like in *Kennett*, we cannot conclude that the Policy creates an unconstitutional subclassification of properties by type, residency status of the owners, neighborhood, or otherwise. To start, the Policy expressly provides that it shall be implemented "without regard to the type of property in question (commercial, residential or otherwise), or the residency status of its owner." (R.R.

18

at 120a.) Further, Mr. Lukens testified that the School District did not instruct Valbridge to target or avoid any property subclassification. This is evidenced by the fact that numerous types of properties were identified for appeal—ranging from commercial to residential to industrial—simply because those properties were underassessed by $250,000 or more. That many of the appealed properties are commercial properties located in the Phoenixville Borough business district, including the Property, is likewise simply because those properties satisfied the Policy's objective financial criteria. (R.R. at 81a, 89a.) As explained by Mr. Lukens, those properties are more represented because they significantly outperformed properties in other areas of the District in terms of their growth in value; thus, "[t]hose were ones that indicated that they had a high probability of a successful appeal" based solely on the Policy's financial criteria. (*Id.*) Therefore, like in *Kennett*, the Policy does not violate the Uniformity Clause as to property subclassifications because the School District intentionally disregarded subclassifications and, consequently, the District's actions in appealing the assessments of properties located in the Phoenixville Borough business district were neither intentional nor systematic. 228 A.3d at 37-39; *see also Valley Forge Towers*, 163 A.3d at 975 (explaining that "this prohibition applies to **intentional** or **systematic** enforcement of the tax laws" (emphasis added)).

The Supreme Court's decision in *Clifton*, upon which Taxpayers rely, does not mandate a different conclusion. Taxpayers argue that the School District exploited the non-uniformity in the District caused by the lack of a recent Chester County-wide reassessment to "cherry pick" underassessed properties to increase its revenue. (Taxpayers' Reply Br. at 5.) According to Taxpayers, the District cannot

cure this non-uniformity through assessment appeals and, thus, it created "the exact type of disparity held by the Supreme Court in *Clifton* to violate uniformity." (*Id.*)

In *Clifton*, the Supreme Court concluded that, as applied, the base year property tax system used by Allegheny County violated the Uniformity Clause because it created "significant disparities" in tax assessments by neighborhood. 969 A.2d at 1201, 1222. In reaching its conclusion, the High Court found unpersuasive Allegheny County's argument that "a taxpayer's right to an assessment appeal to correct individual disparities arising from the absence of a recent countywide reassessment satisfies uniformity," such that its base year system was not unconstitutional as applied. *Id.* at 1227. The Court reasoned that a "[c]ounty cannot satisfy the proportionality requirement by shifting the burden of achieving uniformity to the taxpayer or aggrieved taxing entity (most often the local public school district), whom the [c]ounty would task with correcting its own constitutional deficiency." *Id.* at 1228. While "[t]here may well be circumstances where use of the CLR and the individual appeal process adequately serves to address cases of particular inequity, and as case law demonstrates, both taxpayers and municipalities make use of the appeals process[,] [] that process is not adequate when the inequity is pervasive." *Id.* at 1227. Therefore, the Court remanded to the trial court to ensure Allegheny County completed a countywide reassessment.

Taxpayers' reliance on *Clifton* is misplaced because whether Chester County's lack of a recent reassessment has caused significant, pervasive disparities in assessments by neighborhood in violation of the Uniformity Clause is not at issue. What is at issue is whether the School District engaged in the systematic differential treatment of a subclass of properties in violation of the Uniformity Clause when its appeal of all properties underassessed by $250,000 or more largely affected

20

properties in the Phoenixville Borough business district. As discussed above, the School District did not intentionally or systematically treat properties located in the business district any differently than other properties in the District; rather, the District intentionally disregarded property subclassification in selecting properties for appeal based on the Policy's financial criteria. While it may be true that "[t]he underlying inequity that arises by permitting clearly outdated, decades-old assessments to continue indefinitely for most properties in a district, while identifying the greatest outliers from those assessments to challenge, could be cured by more frequent county-wide assessments of all properties in each taxing district," *GM Berkshire Hills II*, 290 A.3d at 259-60 (Dougherty, J., Opinion in Support of Reversal (OISR)), the School District did not violate the Uniformity Clause simply because it exercised its appeal rights within constitutional boundaries, *see Valley Forge Towers*, 163 A.3d at 975, 980; *Kennett*, 228 A.3d at 37, 40-41.[11]

### D. Spot Reassessment

Finally, Taxpayers argue that the Policy results in an illegal "spot reassessment" of the Property. "While the reassessment was not initiated by the county assessor," Taxpayers reason the Policy results in a spot reassessment because the "Order requires the Board . . . to revise the Property's assessment in a manner

---

[11] In *GM Berkshire Hills II*, Justice Donohue questions "whether a purely monetary threshold based on a rigid figure . . . can comport with our Uniformity Clause jurisprudence" because

> [s]uch thresholds could easily serve as methods of circumventing our holdings in cases such as *Clifton* and *Valley Forge Towers*, as they could be set at amounts that would largely target only certain neighborhoods (i.e., those known to contain more expensive homes), property uses (large apartment buildings vs. small single-family homes), or types (commercial vs. residential).

290 A.3d at 253 n.5 (Donahue, J., OISR).

which increases disproportionately among properties' assessed values." (Taxpayers' Br. at 30.) We disagree.

Section 8802 of the Assessment Law defines spot reassessment as "[t]he reassessment of a property or properties by a county assessment office that is not conducted as part of a countywide revision of assessment and which creates, sustains or increases disproportionality among properties' assessed values." 53 Pa.C.S. § 8802. Pursuant to Section 8843 of the Assessment Law, "[t]he county assessment office is prohibited from engaging in the practice of spot reassessment." 53 Pa.C.S. § 8843. As our Court has explained, "[t]he prohibition against spot assessments precludes entities with the power of assessment from, on their own initiative, reassessing less than an entire county except to correct errors or as otherwise specifically provided by statute." *In re Hawknet Props., LLC*, 320 A.3d 849, 859 (Pa. Cmwlth. 2024). It is settled, however, "that school districts lack the power to assess, and therefore the prohibition against spot reassessment does not apply to appealing school districts." *Vees v. Carbon Cnty. Bd. of Assessment Appeals*, 867 A.2d 742, 748 (Pa. Cmwlth. 2005). Further, "[a] change in assessment resulting from an appeal to the board [of assessment appeals] by a . . . taxing district shall not constitute a spot reassessment." 53 Pa.C.S. § 8843; *see also* 53 Pa.C.S. § 8802 ("The term [spot reassessment] does not include board [of assessment appeals] action ruling on an appeal.").

Here, the Board did not initiate a reassessment of the Property; rather, the School District initiated a tax assessment appeal of the Property. Consequently, the School District, which lacks the authority to assess, did not spot reassess the Property. *See Vees*, 867 A.2d at 747. Moreover, the School District's tax assessment appeal is not rendered a spot reassessment simply because the Order, in effect,

22

requires the Board to reassess the Property for tax years 2023 and 2024. *See* 53 Pa.C.S. § 8843; *see also* 53 Pa.C.S. § 8802. Therefore, the Policy did not result in a prohibited spot reassessment of the Property.

## III. CONCLUSION

For the foregoing reasons, we affirm the Order because the trial court did not err or abuse its discretion.

_____
RENÉE COHN JUBELIRER, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Phoenixville Area School District    :
    :
v.    : No. 786 C.D. 2024
    :
Jian C. Shi and Fei C. Zheng and    :
Chester County Board of Assessment    :
Appeals    :
    :
Appeal of: Jian C. Shi and    :
    Fei C. Zheng    :

# **O R D E R**

NOW, September 26, 2025, the April 24, 2024 Order of the Court of Common Pleas of Chester County is **AFFIRMED**.

_____
RENÉE COHN JUBELIRER, President Judge